(Decided 21st February, 1871 )

---

## COUNTY COMMISSIONERS OF WASHINGTON COUNTY *vs.* THE FRANKLIN RAIL ROAD COMPANY.

*Repeal of Special exemptions from Taxation by General Act—Construction of the Constitutional Requirement that every Law shall embrace One subject, to be described in the Title—Construction of the Acts of 1853, ch. 135, 1856, ch. 70, and 1866, ch. 157.*

The Legislature, by several Acts, incorporated a rail road Company. Under these Acts, the Company claimed to be exempt from taxation. Afterwards, the Company, being in debt, its property was sold under a Legislative Act, which constituted the individuals or corporation purchasing it, a corporate body, made certain material changes in the charter in

County Commissioners of Washington Co. *vs.* Franklin Rail Road Co.

reference to the location of the road, and reserved to the Legislature the right to withdraw or abrogate all rights and privileges " vested by this or any other Act" in the Company. The purchasing Company accepted this Act by organizing and acting under it. Subsequently, the Legislature passed an Act (1866, ch. 157,) entitled "An Act to provide for the general valuation and assessment of property in this State " In this Act was a clause repealing " all laws exempting property from valuation." HELD:

1st. That the Act of 1866, ch. 157, operated as a repeal of any exemption that may have existed in favor of the Company.

2d. That the repealing clause of this Act did not contravene the requirement of the Constitution that " every law shall embrace but one subject, and that shall be described in its title."

APPEAL from the Circuit Court for Washington County.

The question involved in this cause was the right of the Washington County Commissioners to levy a tax on certain property, situated in that county, belonging to the Franklin Rail Road Company. The Company claimed exemption from taxation in virtue of certain Maryland statutes. The case was submitted to the Court below on an agreed statement of facts, and judgment was given for the Company.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*D. H. Wiles*, for the appellants.

*D. Weisel*, for the appellee.

MILLER, J., delivered the opinion of the Court.

The claim of exemption from taxation made by the appellee, rests upon the first clause of the fourth section of the Act of 1836, chapter 79, which provides that " the said Company, in the location, construction and use of its road, shall have and be entitled to the *like* rights, privileges and *immunities* granted to and enjoyed by the Baltimore and Ohio Rail Road Company, in the location, construction and use of its road."

It is insisted, that by force of the terms "privileges and *immunities*," as here used, the same exemption from taxation was granted to the appellee that had been granted to the Baltimore and Ohio Rail Road Company by the last clause of the eighteenth section of the Act of 1826, chapter 123. But it is not necessary to inquire whether this position be sound, because assuming the exemption claimed once existed, we are of opinion it was repealed, and did not exist at the time these taxes were levied.

The agreed statement of facts shows that State and county taxes for the year 1867 were levied under the Act of 1866, chapter 157, on a ticket office, and warehouse and lot belonging to the appellee, a Company *incorporated* in pursuance of the Acts of 1836, chapter 79; 1853, chapter 135, and 1856, chapter 70, and *organized and in existence in this State.* By this, we are referred to these several laws as the source from which the present corporation, whose property is taxed, derives its corporate existence, powers and privileges. From these it appears that, by the Act of 1836, chapter 79, power and authority was given to the Franklin Rail Road Company, a corporation chartered by the State of Pennsylvania, and having a line of road in that State, to construct a rail road from a certain point on the line dividing the two States, to connect with the Baltimore and Ohio Rail Road and the Chesapeake and Ohio Canal, at or near Hagerstown or Williamsport, but not to intersect the Canal more than half a mile west of the latter place. The road was constructed from the State line to Hagerstown, but the Company thereby incurred heavy debts, which they were unable to pay, and their entire road in both States having become greatly dilapidated, laws were passed by each State, appointing commissioners to sell that part of the road within its limits, and providing for distribution of the proceeds amongst the creditors of the Company. The first Act, providing for the sale of the Maryland portion of the road, is the law of 1853, chapter 135, the provisions of which need not be more particularly noticed than

to state that its eighth section is identical with the sixth sec-
tion of the second and supplemental Act of 1856, chapter
70. By the fourth section of this latter Act, it is enacted
that the purchaser or purchasers, whether individuals or a
foreign corporation, when they shall have relaid the road as
therein provided, shall be and "are hereby declared a body
corporate by the name of 'The Franklin Rail Road Com-
pany,' with all the powers, franchises and privileges granted"
by the two preceding Acts, "and with *further* power and
authority" to construct a railroad "from Hagerstown to and
*across* the Potomac river at any point between" Hancock
and Knoxville, thus authorizing a different route and termi-
nus of the road from that prescribed by the original Act of
1836. It is very clear the purchasers constituting the pres-
ent corporation, called "The Franklin Rail Road Company,"
derived their corporate name and existence from this latter
Act of 1856. For their powers and privileges, reference is
made to the two antecedent laws, which, for that purpose, are
to be regarded as embodied in and reënacted by this Act.
This is their charter by which they were created a body cor-
porate in and under the laws of this State. By accepting it,
with the benefit of the additional powers it conferred, and
organizing and acting under it, they accepted all its provisions
and conditions, including its sixth section, by which it is en-
acted, "that the Legislature hereby reserves the right to alter,
amend and repeal the provisions of this supplement, and to
withdraw and abrogate all the rights, privileges and fran-
chises vested in the said Franklin Rail Road Company by it
or *any other Act or Acts of Assembly of this State.*"
Having thus reserved, in the broadest terms, the unfettered
power of alteration, repeal and withdrawal, it was competent
for the Legislature to exercise it at any time, in any mode,
and to any extent they chose; and by so doing, no obligation
of contract is impaired, because it was an express condition
of this charter that this power should be exercised at the
absolute will and pleasure of the Legislature. Now, the Act

of 1866, chapter 157, the very law under which these taxes were imposed by its first section, enacts, "that *all property,* real, personal and mixed, of all kinds and descriptions whatever *in this State,* shall be liable to valuation and assessment, and shall be chargeable with taxes according to the provisions of this Act," and its thirty-third section contains a clause expressly repealing " *all laws exempting property from valuation.*" Is not this a valid exercise of the power reserved in the Act of 1856, to the extent of effecting a repeal or withdrawal of any exemption from taxation that may ever have existed in favor of this corporation? Why not? No more appropriate place could be found for it than in a law providing for taxation of all property in the State. The intent to withdraw *all* exemptions, expressly subject to repeal, or within reach of legislative power, is manifest from the plain terms of the first section, and the repealing clause. The same thing also appears from the different provisions of antecedent laws on the same subject. The preceding general assessment Act of 1852, chapter 337, contained no clause repealing exemptions, and subjected to taxation only property " *now by law liable to be valued and assessed,*" thus recognizing and protecting all exemptions then existing. Upon the question of intent there is no doubt.

But it is said, this repealing clause contravenes the requirement of the Constitution, that " every law shall embrace but one subject, and that shall be described in the title."

The title, "An Act to provide for the general valuation and assessment of property in this State," is sufficiently comprehensive in description to include a repealing clause of this character, and such clause is also clearly within the one subject with which the law professes to deal. This objection is fully answered by the construction given to that constitutional provision in *Davis vs. The State,* 7 *Md.,* 151 ; *Keller vs. The State,* 11 *Md.,* 525 ; *Parkinson vs. The State,* 14 *Md.,* 184; and *Mayor, &c. of Annapolis vs. The State,* 30 *Md.,* 112. It is also urged, that a chartered right cannot be impaired

County Commissioners of Washintgon Co. *vs* Franklin Rail Road Co.

or withdrawn except by an act purporting to be a supplement to the charter itself; that good faith and fair dealing on the part of the State towards those enjoying a charter for great public purposes, and involving large investments and interests, requires, in order to effect a valid change or repeal of the charter under a reserved power, an Act specially passed for that purpose, clearly expressing the object by title and in subject-matter.   This would be a strong argument addressed to the sense of right and justice of the Legislature, but the Courts have no authority to limit the exercise of legislative power, or the mode in which it shall be exercised, further than a just and reasonable interpretation of Constitutional inhibitions and requirements will justify.   In most cases, a repeal or modification of essential and usual corporate *powers* and *franchises*, can be effected in no other way than by an Act passed for that especial purpose.   But, in a case like the present, where no purpose is sought to be accomplished, save the mere withdrawal of an exemption from taxation, the right to withdraw which, at any time, was expressly reserved in the law which granted it, we can see no objection, Constitutional or otherwise, to its being done in an Act making provision for the general taxation of all property in the State, provided the language used is sufficiently plain to manifest a legislative intent to effect that object.   Upon this question we have no doubt, and have, therefore, no hesitation in deciding that these provisions of the Act of 1866 effected a valid repeal of the exemption claimed, if any such ever existed.

Resting our decision entirely on this ground, and expressing no opinion upon the construction of the fourth section of the original Act of 1836, we must reverse the judgment appealed from, and enter judgment for the appellants in accordance with the agreed statement of facts.

*Judgment reversed and*
*judgment for appellants.*

(Decided 21st February, 1871.)