ATLANTIC & P. R. CO., (BAILEY v.) See Case No. 732.

---

## Case No. 631.
ATLANTIC & P. R. CO. v. CLEINO.
[2 Dill. 175.] [1]

Circuit Court, E. D. Missouri. 1873.

ILLEGAL TAXES — REPLEVIN — LEGISLATIVE CONTRACT TO EXEMPT PROPERTY FROM TAXATION.

1. Under the legislation of Missouri back taxes upon real estate cannot be collected from the personal property of a subsequent purchaser of such real estate; and if such personal property be seized by the tax collector the owner may maintain replevin against him to recover its possession. (See note.)

2. Replevin lies against the tax collector when the assessment of the taxes is void for which the property was seized. Per Treat, District Judge.

3. The plaintiff is entitled to the benefit of the legislative exemption from taxation contained in the act of the legislature of December 25, 1852. Per Treat, District Judge. (See note.)

[Cited in Bailey v. Atlantic & P. R. Co., Case No. 732.]

At law. This was an action of replevin [by the Atlantic & Pacific Railroad Company against Henry Cleino] to recover certain personal property of the plaintiff seized by the defendant as sheriff of Phelps county, for taxes assessed in 1868, against the South Pacific Railroad Company, upon lands which were then the property of that company, but are now the property of the plaintiff, another and distinct corporation. The plaintiff claims that the seizure was illegal: First, because the lands taxed were, by a valid legislative contract, exempt from taxation. Second, because the plaintiff was not liable, as the vendee, in 1870, for taxes levied on said lands in 1868. In support of the first ground, reliance is placed upon sec. 12 of the act of December 25, 1852, relating to the Pacific Railroad Company, of whose privilege in this respect the plaintiff claims to be entitled, as the successor of that company, under various legislative acts and the provisions of the constitutional ordinances of 1865, upon the subject of railroads. The act of December 25, 1852, § 12, provided that "The said Pacific Railroad, and the said Southwestern Branch Railroad shall be exempt from taxation, respectively, until the same shall be completed, opened, and in operation, and shall declare a dividend, when the road-bed, buildings, machinery, engines, cars, and other property of said completed road, at the actual cash value thereof, shall be subject to taxation at the rate assessed by the state on other real and personal property of like value. * * * Provided, that if said company shall fail for the period of two years after said roads, respectively, shall be completed and put in operation, to declare a dividend, that then said

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

company shall no longer be exempt from the payment of said tax." It is further provided in said section, that after said road is completed and declares a dividend, the president shall return the value of the road-bed, buildings, machinery, engines, cars, and other property appertaining to said completed road, to the auditor of state, who shall assess the tax, and if not paid as therein provided, an action is to be brought to recover the tax, and a penalty imposed for the failure. The road was not completed until May, 1870, and no dividends have ever been paid. As to the legislative history, see act of December 10, 1855, (Laws 1855, §§ 20, 21, 25;) Const. 1865, art. 11, § 16, and accompanying railroad ordinances; Act Feb. 19, 1866, (Laws 1866, p. 108;) Act March 20, 1866, (Laws 1866, p. 101;) Act March 17, 1868, (Laws 1868, p. 118.) On the 20th of October, 1870, the South Pacific Railroad Company, under legislative authority, (Laws 1870, p. 90,) sold and conveyed all its property and franchises to the plaintiff, a corporation chartered by congress, July 27, 1866. [14 Stat. 292.] By virtue of said several acts, and the proceedings and conveyances under them, the plaintiff became the owner of the lands and railroads taxed, and claims to succeed to the original exemption contained in the abovementioned 12th section of the act of December 25, 1852. The taxes in question were assessed against the lands granted to aid in building the road by the act of congress of June 10, 1852. [10 Stat. 8, ch. 15.] The other necessary facts appear in the opinion.

Baker & Jewett, for plaintiff.
Mr. Clover, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

TREAT, District Judge. It is the purpose of the court to state briefly, the conclusions reached in these cases, without giving an elaborate analysis of the various statutes and conveyances mentioned, and without giving in extenso the reasons upon which the conclusions are based. The exemption from taxation contained in section 12 of the act of December 25, 1852, must be held to include all the property of the Pacific Railroad Company, whether pertaining to the main or branch road. By the terms of that act the exemption was to continue for two years after the roads were completed, etc. The main question argued is, whether, under the sales made pursuant to the ordinance of 1865, through which sales the plaintiff claims successorship to the Southwest Pacific Company and the South Pacific, the lands, etc., thus derived continued subject to the original exemption, or whether by force of the constitution of 1865 the exemption ceased, and did not pass to the grantees at said sales and their corporate successors. It is evident that the terms of the several acts and conveyances are broad enough to continue the exemption in full force. The railroad ordi-

nance required that on the default of the company to pay the principal or interest of the state bonds issued to it, the general assembly should provide by law for the sale of the railroad and other property, and the franchise of the company, "under the lien reserved to the state." In the suit in this court, wherein the Iron Mountain Railroad Company was a party, [Trask v. Maguire, Case No. 14,145,] there was no lien on the franchise of the company reserved to the state. Section 5 of that ordinance provides what shall be done when the state becomes the purchaser of the "railroad and other property or the franchises sold," viz: that "no railroad or other property or franchises purchased by the state shall be restored to the company except upon the terms stated; and also that no sale or other disposition of any such railroad or other property or their franchises shall be made without reserving a lien upon all the property and franchises thus sold or disposed of." etc.

It seems that the ordinance was designed to, and did, empower the state to sell or purchase and reconvey all the franchises on which a lien had been reserved by the state, antecedent to the ordinance, including exemption from taxation as originally granted by the act of 1852. The provisions of the constitution of 1865 forbade the making of such exemptions thereafter; and when taken in connection with the ordinance of even date and of like obligatory force it must be held to except this railroad's franchises as previously granted. The general rule applies that when a special provision is made for an excepted class of cases, the general rule is to be read as if the exception were incorporated in it. In the case of the state to the use of the State v. Dulle, 48 Mo. 282, the supreme court of Missouri seems to hold that said twelfth section of the act of 1852 "makes provision for the ascertainment and payment of state taxes, but does not include county taxes;" but a careful examination of that case and of those to which it refers renders it very doubtful whether that court did intend to be so understood. That was an action of trespass against the collector for buying plaintiff's property for unpaid county taxes, and after referring to the general law concerning county assessments, that court says: "We think the statute sufficiently conferred jurisdiction; whether rightfully or wrongfully, it is not necessary now to decide, as nothing but the liability of the defendant is involved in this contest."

The statement to which reference is made is in the revenue law, (2 Wag. St. p. 1196, §§ 7, 6,) in which "express power is given to the several county courts to levy such sums as may be annually necessary to defray the expenses of their respective counties by a tax upon all property and licenses made taxable by law for state purposes, with certain exceptions."

That court, in the same opinion, says: "From the view we have taken it will be

unnecessary to decide whether the legislature, acting under the provisions of the constitution, intended by the general revenue law to repeal the alleged exemption from taxes." Hence, it would seem that the court waived the question which, in a former part of the opinion, appears to have been so definitely decided. It closes the opinion with the following views: "When the statute made all property liable to taxation, and empowered the several county courts to levy such sums as might be annually necessary to defray the expenses of their respective counties, by a tax upon all property made taxable by law for state purposes, it conferred the jurisdiction, and was a sufficient warrant for the collector to justify him in obeying the process and mandate placed in his hands." Acting in good faith, and what was deemed good authority on its face, he ought not to be compelled to litigate the legality of the law. This case differs widely from those where the officer has been held answerable in trespass for acting without any authority.

Giving to this decision of the Missouri supreme court its fullest scope, it does not cover the cases before us. True, it may be difficult to determine on what established rules it held the defendants in that case not liable if the property levied upon was exempt; for a manifest distinction exists between process resting upon erroneous proceedings and process without any authority —between a void and a voidable proceeding or between errors subject to review or correction in the proper forum, and the entire absence of jurisdiction over the subject matter. If the county had no authority to levy or assess for taxes except on property subject to state taxation, then if the property on which the assessment was made was not subject to state taxation, the assessment upon it was void. The decision referred to cannot be considered as going further than that trespass will not lie against a collector and his sureties when the assessment and levy are made under a general law, which, by its terms, seems to cover the case, though it be that on a careful analysis of various supposed exemptions, it should be found that an exemption did really exist. If not exempt, then replevin will not lie to take from the collector property by him seized as by distraint, though the mode of assessing the same was informal and irregular. In such a case, inasmuch as ample and proper modes for correcting errors in the assessment exist. and the process is not void for want of jurisdiction, neither replevin nor trespass will lie.

The facts in this case disclose that the assessment was made in 1868, for taxes due upon lands then owned by the South Pacific Railroad Company, and that subsequently a levy therefor was made on personal property belonging to the Atlantic and Pacific Railroad Company. Neither the act of 1870, nor any other act, authorizes a levy for back taxes on real estate, to be made on the personal property of any one, save the person who was the owner of the land at the time the assessment was made. The tax lien may still remain on the land, although its ownership has been transferred, but the personal property of the subsequent owner is not subject to seizure for back taxes due from the prior owner. This point is conclusive of these cases.

Although I am prepared to hold that the property of the Atlantic and Pacific Railroad Company, acquired under the sales made pursuant to the ordinance of 1865, was exempt from state and county taxation for the period named, and consequently the levy of the defendant was void, yet, as Judge DILLON has not looked into or examined that question, the decision of this court is not based on that proposition. It may be that an unauthenticated report of a recent decision by the supreme court of the United States—Railroad Co. v. Prescott, [16 Wall. (83 U. S.) 603,]—is decisive of these cases on grounds not presented in argument, inasmuch as all of the lands on which this assessment was made were subject at the time of the assessment to revert to the United States government.

Therefore the court finds for the plaintiff, on the ground that the personal property of the latter was not subject to levy for an assessment previously made on the lands owned at the time of the assessment by another party. In other words, the collector cannot levy back taxes on lands upon the personal property of a subsequent purchaser.

DILLON, Circuit Judge. I concur in the opinion that the plaintiff is entitled to recover, and I place my judgment upon the distinct and sole ground that I discover no authority in the legislation of Missouri, general or special, to levy upon the personal property of A, for taxes assessed against the real estate of B, although since the assessment such real estate may have become A's property: and in such a case, the owner whose personal property is thus seized may maintain replevin against the officer, the same as if his property had been levied upon by the sheriff on an execution against another person.

As this point is decisive of the case, I have not deemed it necessary to examine the question whether the lands against which the taxes were assessed were exempt in the plaintiff's hands under the 12th section of the act of December 25, 1852, and the subsequent legislation of the state, including the constitutional provision (article 11, § 16) and the railroad ordinances referred to in the statement of the case. Upon this subject I give no opinion.

Judgment for the plaintiff.

[NOTE. See, also, Dixwell v. Jones, Case No. 3,937. First Division St. P., etc., R. Co.

v. Parcher, 14 Minn. 297, (Gil. 224,) 1869, an immunity from taxation in the original charter of a railroad company was held to accompany lands transferred by the state (after a foreclosure of a lien in its favor) to a new corporation. See, also, County Com'rs v. Franklin R. Co., 34 Md. 159; Tomlinson v. Branch, 15 Wall. (82 U. S.) 460; Wilmington, etc., R. Co. v. Reid, 13 Wall. (80 U. S.) 264; Woodson v. Murdock, 22 Wall. (89 U. S.) 351.]