County Commissioners of Dorchester County *vs.*
George J. Meekins.

*Constitutionality of the Act of 1878, ch. 160, relating to Dor-
chester County—Construction of sections 29 and 33 of
Article 3 of the Constitution of 1867.*

The Act of 1878, ch. 160, is entitled : "An Act to repeal sections 87
and 90 of Article 10 of the Code of Public Local Laws, title,
'Dorchester County,' sub-title, ' County Commissioners,' enacted by
the Act passed at January Session, 1870, ch. 449, and all other sec-
tions or parts of sections of the Code of Public General Laws, and
Public Local Laws, and all other Acts and sections or parts of Acts
or sections of the 'Acts of the General Assembly of Maryland,'
inconsistent with the provisions of this Act, and to enact the fol-
lowing in lieu thereof." The first section of this Act repeals sec-
tions 87 and 90 of article 10 of the Public Local Laws of Dor-
chester County, as enacted by the Act of 1870, ch. 449, and all
other Acts and sections or parts of Acts or sections of Acts incon-
sistent therewith. The remaining sections divide the county into
five Commissioner districts, and provide for the election of one
County Commissioner for each of said districts at the next general
election; provide for the appointment of the Treasurer of the
county by the Governor, and prescribe what duties he is to perform,
imposing on him, in addition to what he performed previously
under the Act of 1870, the duty of making monthly reports to the
State Comptroller. This Act makes the Treasurer clerk to the
County Commissioners, as he had been under the Act of 1870; and
the appointment of the Tax Collectors is given to the Treasurer and
their duties are prescribed. The Act further enacts a system for
levying and collecting the taxes in the county and for disbursing
the public money, and the duty of executing the same is imposed
on the County Commissioners, the Treasurer and the Tax Collectors.
Held :

1st. That this Act is in accordance with the requirements of section
29 of Article 3 of the Constitution, which provides, "that every law

County Comm'rs of Dorchester Co. *vs.* Meekins.

enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

2nd. That this Act is a Public Local Law for Dorchester County, and not a special law within the meaning of section 33 of Article 3 of the Constitution, which provides, that " the General Assembly shall pass no special law for any case, for which provision has been made by an existing general law."

The subject of legislation was the management of the public affairs of Dorchester County, by the County Commissioners, and the other officers of that county, elected and appointed for that purpose.

The title of this Act shows, that the County Commissioners of Dorchester County, their powers and duties, form the subject to be dealt with by the Act; and that the provisions of the Act of 1870, which were intended to take the place of sections 87 and 90 of the Local Code, relating to Dorchester County, were to be repealed, and others substituted.

There is no restriction upon the Legislature, with respect to the repeal of laws by reference to their titles alone, under section 29 of Article 3 of the Constitution.

The clause of section 29 of Article 3 of the Constitution, which provides, that it shall be the duty of the General Assembly, to enact laws into articles and sections, is merely directory.

APPEAL from the Circuit Court for Dorchester County.

The appellee filed his petition in the Circuit Court for Dorchester County on the 9th May, 1878, representing: that by the Act of the General Assembly of Maryland, passed at the January session, 1878, ch. 160, the Governor of Maryland was authorized and directed to appoint a treasurer for said county, who was also to act as clerk to the Board of County Commissioners; that the treasurer so appointed, was directed to give bond to the State, in a penalty of not less than fifty thousand dollars and for such sum as the County Commissioners should direct, conditioned for the faithful performance of his duties as treasurer and clerk, with security to be approved by the County Commissioners, that the Governor duly appointed

County Comm'rs of Dorchester Co. *vs.* Meekins.

and commissioned the appellee, who qualified by taking the oath of office; that the County Commissioners directed him to execute a bond, as required by the Act, and present it for their approval; that he did so execute and present a bond as directed, which the Board of County Commissioners refused to approve. The appellee prayed for the writ of *mandamus* against the County Commissioners ordering them to endorse their approval on the bond. Upon this petition, a rule to show cause was granted, and on the 15th May, 1878, the appellants filed their answer to the same: stating that they refused to approve the bond, because they had been advised that the Act of Assembly, under and by virtue of which, the Governor had issued his commission as treasurer to the appellee, was in conflict with the Constitution of Maryland. It was afterwards agreed by the parties that all questions of facts were waived, that the sufficiency of the penalty of the bond and of the securities thereto, tendered by the petitioner for the approval of the County Commissioners, was admitted, and that the cause was submitted solely on the questions of law raised by the answer and the arguments of counsel. Upon the petition, answer and agreement being submitted, the Court passed an order, in which they recited: that the defence having been rested solely, on the alleged unconstitutionality of the Act of Assembly creating said office and officer, they granted the petition of the appellee; and they directed that a writ of *mandamus* should issue as prayed. From this order the County Commissioners appealed.

The cause was submitted to BARTOL, C. J., BOWIE, STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Sewell T. Milbourne, James Wallace,* and *D. M. Henry, Jr.,* for the appellants.

The Act of 1878, ch. 160, is in conflict with section 29, of Article 3, of the Constitution. *Davis vs. The State,* 7

County Comm'rs of Dorchester Co. *vs.* Meekins.

*Md.*, 151; *Keller and others vs. The State*, 11 *Md.*, 525; *Parkinson vs. The State*, 14 *Md.*, 184; *Mayor, &c., of Annapolis vs. The State*, 30 *Md.*, 112; *County Commr's, &c. vs. Franklin R. R. Co.*, 34 *Md.*, 159; *Durkee vs. Janesville*, 26 *Wisc.*, 627; *Sedgwick on Constitutional and Stat. Law, note* 521.

First. This Act has no sufficient or intelligible title whatever.

It professes to be "an Act to repeal sections 87 and 90, of Article 10, of the Code of Public Local Laws, title 'Dorchester County,' sub-title 'County Commissioners,' enacted by an Act passed at the January session of 1870, chapter 449." But an examination will show (1.) That no such sections of such an Article, with such a title or sub-title, were enacted by chapter 449, of the Acts of 1870. (2.) That sections 87 and 90, of Article 10, of the Code of Public Local Laws, were repealed before the Act of 1878 was passed. In a word, at the time this chapter 160, of the Acts of 1878, was introduced and passed, the Public Local Code had no such sections, of such an Article, with such a title, whether reference were had to the original Code, to the Acts of Assembly, or to the particular chapter 449, of the Acts of 1870—said sections, as they stood in the original Code, having been repealed, and no other sections having received their respective designations. Here then is a proposition to repeal certain alleged sections bearing a certain title, but it is found that there are no such sections on any such subject. How can such a proposition be taken as describing the subject of proposed legislation?

But it may be urged that the Article, and not the section, fixes and defines the subject. In the General Law, this is, in some measure, the case, but never so, in the Local Law.

But the appellee maintains, that as sections 87 and 90, of the original Local Code for said county, were repealed

by chapter 449, of the Acts of 1870, the sections of said Act, *ipso facto,* became designated by said numbers. There is nothing in chapter 449 to authorize any such assumption, and many things to show a specific purpose to the contrary.

The so-called title, then, of this Act of 1878, is utterly without intelligible meaning. However viewed, it is a proposition to repeal certain statutory provisions upon a given subject, which had and have no existence at all.

The title of this Act is insufficient, because it professes to describe the subject of the statutory provisions repealed, and not the subject of the enactments proposed to be passed.

The general propositions deduced from the adjudicated cases, and especially from the case of *Davis vs. State,* 7 *Md.,* 151, declare, among other things—

(1.) That members of the Legislature should be able to learn affirmatively from the title, what forms the subject of the several provisions of the law.

(2.) That the title should not be calculated to mislead, and that the subject must not be so introduced, as that it may, or may not be the subject of the new statute.

The repeal of one statute and the enactment of another as a substitute, does not necessarily imply, that the subject of the latter is the subject of the former. On the contrary, the subject-matter of the former may be entirely superseded, and a new subject-matter be created.

Sedgwick refers to a case which seems to cover this very question. *People vs. Millen,* 32 *Illinois,* 181.

Second. This Act—chapter 160, of the Acts of 1878— is multifarious, and the parts thereof, under which the appellee claims, are not described by the title, even if it be held, that the title describes any subject at all.

This Act embraces provisions concerning the following matters and things:

County Comm'rs of Dorchester Co. *vs.* Meekins.

1. Certain sections fix the number of the County Commissioners for said county, appoint the districts from which they are to be respectively chosen, and provide in regard to their compensation.

2. Other sections establish the office of Treasurer of Dorchester County, provide that he shall be appointed by the Governor, and hold office for two years; they divorce said office wholly from the Commissioners' office, and make it an independent and co-ordinate branch of government, deprive the Commissioners of the right to appoint Collectors of Taxes, and to supervise the collection of the same, and vest such rights in him; make him the receiver of both State and county moneys within the county—an account to be rendered of the former to the Comptroller, and of the latter to the Commissioners, and impose on him the duty of acting as the clerk of the Commissioners.

But even the abridgment of their powers is done, not by reference to the Commissioners, but by implication—by granting their functions to the County Treasurer.

3. The remaining sections concern the State and county revenue and taxes within the county, and provide a system for collecting the same.

All the provisions of a statute must fairly relate to the same subject, have a natural connection with it, or be the incidents or means of accomplishing it. *Sedgwick's Constitutional and Statutory Law*, note 521.

A statute must concern but one subject, and must embrace no provision that is not *germane* to that subject.

So far, there is no difficulty. But we learn in the adjudicated cases that this clause of the Constitution will be satisfied, if any provision of an Act is *germane* to the general subject of the same. Now this expression often creates erroneous views. The word *germane* is taken to mean "similar, analogous, mutually related," and "having to do with the same or like things." It means "near akin to," "closely related to or connected with." When,

therefore, the Courts say, that all the provisions of a law must relate to the same general subject or be *germane* thereto, they mean that they must relate to a given subject, or a subject near akin to the said subject. It will not suffice if it relates to a subject which is connected with the same concerns as the other subject, but it must be related, as before remarked, to the given subject itself. Under the Act of 1870, the provisions of the first section were *germane* to the Commissioners' office, because said section established certain machinery for said office, while the second section, which fixed the number of the Commissioners, related directly to the office. The former authorized the Commissioners to appoint a subordinate agent, with the title of County Treasurer, and to delegate to him the performance under their control of certain of the work of said office. It did not divest them of their official powers, but enabled them to delegate them or to perform by means of this new agent. The new officer had no independent or co-ordinate powers or entity—not more than Clerk to the Commissioners would have, whose duties he was required to perform.

Do all the provisions of this Act of 1878 concern the Commissioners' office in Dorchester county, or are *germane* thereto?

This law changes the whole character of the County Treasurer's office, as the same stood under the Act of 1870. It has no relation to, or connection with, the Commissioners' office, as such. It is entirely divorced therefrom; it is independent of and co-ordinate with that office, except that it renders an account of one branch of its business to the Commissioners, as it does of the other branch to the Comptroller. The incumbent is appointed by the Governor, and exercises powers and performs duties, created by law, and not derived from his connection with the other office. On his behalf, many of their most important prerogatives are taken from the Commissioners and vested

in him. It is as independent of the Commissioners' office, as the State Treasurership is distinct from the Comptrollership, and under this clause of the Constitution, it will form as distinct a subject of legislation as either of said offices. The Commissioners and the Treasurer, in some measure, deal with the same concerns, but not because of any relationship in the offices, but because the law confers authority to deal with them. What relation can these offices have, which all co-ordinate and independent offices do not have? What can make one *germane* to the other? The Commissioners give judgment for or against the county creditors, and assess the amounts to be paid by the property holders; while the Treasurer appoints Collectors to collect the taxes assessed, supervises the collection of the same, and disburses the moneys, when paid over to him by the collectors, according to the judgments, previously rendered by the Commissioners for divers creditors of the county. Could the line of separation between the two offices be more distinctly drawn? Could each have a more distinct identity? Do not the two offices constitute two subjects, as definitely, as any other two things can do so? If a Court was found to have so much business that its jurisdiction had to be narrowed, and an Act was passed creating a new Court, and transferring to it a part of the old Court's jurisdiction, but reserving to the latter an appellate relation, would the title to the Act describe the new Court or the old one as its subject? Would this title answer—"An Act to repeal all laws concerning —— Court inconsistent with this Act, and to enact the following in their place." Under this could a new Court, with certain branches of the old Court's jurisdiction, be formed—the old Court being by mere implication deprived of such portion of its jurisdiction?

But it is urged that under this Act the two offices are closely related to each other, and may be embraced under the title of the older one. If this be so, this clause of the

Constitution is violated, in that two subjects are embraced in one Act.

But we are further told, that the Treaaurer is made to perform the duties of Clerk to the Commissioners. This Act does not create the Clerk's office, but the Treasurer's, and this clause is nothing more than a *descriptio personae* of the individual who is to be such Clerk. It is a mere designation of the mode of filling the Clerk's office, and arranging the tenure.

An Act embracing the provisions of this law, concerning the Treasurer's office, and bearing its name, as the subject of the title, would of itself be multifarious.

Apply the test furnished by the *Davis Case*. Having examined the nature of the provisions of this Act, with regard to the Treasurer, could anything short of supernatural penetration have derived from said title the remotest conception that an office was to be created, to be filled by the Governor, and to be placed in possession of some of the most important functions previously exercised by the Commissioners; that from the latter, the privilege of appointing their own Clerk was to be taken, and an appointee of the Governor was to be foisted upon them, without any voice being allowed them in the matter; and that the entire management of the county and State finances, within said county, was to be placed in his hands.

This Act, also, violates the provision of the Constitution, which forbids the enactment of any Special Law, where there is already a General Law.

*Clement Sulivane* and *Chas. F. Goldsborough*, for the appellee.

There are certain principles and rules governing all Courts in construing constitutional questions, which we assume are authoritatively settled, and which need no authorities to sustain them. 1st. That the Courts in construing legislative enactments are bound to give effect to

County Comm'rs of Dorchester Co. *vs.* Meekins.

the plain intent and meaning of the Legislature when unequivocally expressed, and will make every intent to support it. 2nd. That in construing a law in the light of the Constitution, they are bound to make every reasonable intendment to enable both to stand together, and never to pronounce a law unconstitutional, unless so plainly and directly in conflict with a constitutional provision as to leave no discretion in the premises. 3rd. That the Legislature enacting the law is presumed to know the the Constitution and Laws of a previous date bearing on the subject in hand, and the adjudicated interpretation of the same. 4th. That it is necessary to ascertain the *cause* of a constitutional provision and the *real intent* of the framers thereof, in order to arrive at its true scope and meaning, unless the language is too clear to admit of any doubt on the subject.

The aim and object of the clause, under discussion, of sec. 29, Art. 3, of the Constitution, have been judicially determined, and are no longer open questions of constitutional construction. *Davis vs. The State*, 7 *Md.*, 160, (confirmed in *Keller vs. The State*, 11 *Md.*, 531, important.) *Parkinson vs. The State*, 14 *Md.*, 193, 194; *Mayor, &c. vs. The State*, 30 *Md.*, 118, 119; *Constitution of* 1851, *Art.* 3, *sec.* 17.

The meaning of the clause is there decided to be that no Act of a general nature shall embrace a subject of a private or local nature, and no Act shall contain a variety of discordant and conflicting provisions. That these being the evils sought to be prevented by the language used, it is submitted that by no possibility of construction can the Act of 1878, chapter 160, be brought within the aim or scope of the constitutional provision in question, as expounded by the Courts.

In reference to the clause of section 29, Art. 3, of the Constitution of 1867, "that no law shall be revived or amended by reference to its title or section only," it is

noticeable that the words "be repealed" occurred in sec. 17, Art. 3, of the Constitution of 1851, (from which sec. 29 was borrowed,) but were omitted from the present Constitution. This was clearly from design, and leaves the General Assembly free to repeal any law by reference to its title alone, or to its section alone, or without any reference at all, the power of that body being supreme, like the English Parliament, in all matters not prohibited by the Constitution. The Act of 1878, chapter 160, neither revives nor amends any law, but absolutely repeals one particular law, and then, in a general way, all other inconsistent laws, and enacts a substitute therefor.

"A legislative Act should not be pronounced unconstitutional or invalid, no matter how well founded the doubts in regard to it, except in a *clear* case." *Harrison, et al. vs. The State, &c.,* 22 *Md.,* 491.

In the absence of a judicial interpetation of the meaning of sec. 29, Art. 3, of the Constitution, there is a clear absence of conflict between its provisions and the titling of chapter 160, of the Acts of 1878. All its sections relate to the one subject of the financial regulations of Dorchester County, and its government under the County Commissioners, and that government is the sole subject of the Act, and every previous Act on the subject of the Treasurer and Clerk was enacted under the same titling. (See *Local Code, Art.* 10 ; *Act of* 1865, *chapter* 85, and *Act of* 1870, *chapter* 449.)

The Act of 1870, ch. 449, certainly repealed sections 87 and 90, of the Local Code, Art. 10, and substituted its sections therefor, and it was the *obvious intent* of the Legislature in the Act of 1878, to repeal the Act of 1870, which manifest intention is expressed in its title.

The following cases, construing a similar provision in the New York State Constitution, will be found of interest in respect to the light they shed on the duty of the Court in the premises, and the intent of the Constitution, if the

Maryland cases should not be deemed by the Court absolutely conclusive of the question of constitutionality presented. *In the Matter of Philip Wakker,* 3 *Barb.,* 162; *Lecamp vs. Eveland,* 19 *Barb.,* 83–84; *The Sun Mut. Ins. Co. vs. The Mayor, &c.,* 8 *N. Y.,* 252; *Brewster vs. The City of Syracuse,* 19 *N. Y.,* 116; *The People vs. Lawrence,* 36 *Barb.,* 192.

That the Act in question is not in conflict with sec. 33, of Art. 3, of the Constitution, is entirely settled by the case of the *State, &c. vs. County Comm'rs of Baltimore County,* 29 *Md.,* 519, where the same point precisely was raised and decided adversely to the views of the appellants by this Court.

Grason, J., delivered the opinion of the Court.

The only question presented upon this appeal is the constitutionality or unconstitutionality of the Act of 1878, ch. 160. Section 29, of Article 3, of the Constitution, provides that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title," and section 33 of the same Article, forbids the General Assembly to pass "a special law, for any case, for which provision has been made by an existing general law," and it is contended that the law in question is obnoxious to both of these provisions.

The Act of 1878, ch. 160, is a Public Local Law for Dorchester County, and in the case of *State, ex rel. Webster vs. The County Commissioners of Baltimore County,* 29 *Md.,* 519, this Court has held that a Public Local Law is not a *special* law, within the meaning of section 33, of Article 3, of the Constitution, and that decision is conclusive upon this ground of objection to the law in question. If unconstitutional at all, it must, therefore be so, because it is in conflict with the clause of the 29th section before quoted.

In construing Acts of Assembly in the light of the Constitution, every reasonable intendment must be made

to enable both to stand, and an Act will not be held to be unconstitutional, unless it is in such plain conflict with some provision of the Constitution as to leave no discretion to the Court in the premises. In ascertaining the effect of a constitutional provision, it becomes necessary to ascertain the intent of its framers, unless the language used is so plain and unequivocal as to leave no doubt upon the subject. But the intent of the framers of the Constitution, and the evils to be remedied by this clause of section 29, of Article 3, have been finally settled by this Court. In the case of *Davis vs. The State*, 7 *Md.*, 160, an almost identical clause of section 17, of Article 3, of the Constitution of 1851, was involved, and this Court then said: a "practice had crept into our system of legislation, of engrafting upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which, if they were offered as independent subjects, would never have received their support. In this way the people of our State have been frequently inflicted with evil and injurious legislation. Besides, foreign matter has often been stealthily incorporated into a law, during the haste and confusion always incident upon the close of the sessions of all legislative bodies, and it has not unfrequently happened, that in this way the statute books have shown the existence of enactments, that few of the members of the Legislature knew anything of before. To remedy such and similar evils, was this provision inserted into the Constitution, and we think wisely inserted." To the same effect are the cases of *Keller vs. The State*, 11 *Md.*, 531, and *Parkinson vs. The State*, 14 *Md.*, 193. Again in the case of the *Mayor, &c., of Annapolis vs. The State*, 30 *Md.*, 118, 119, this Court, in construing section 28, of Article 3, of the Constitution

of 1864, containing a clause like the one now under con-
sideration, has said, that "the object of this provision and
the evils against which it was intended to guard, are very
clearly stated by this Court in *Davis vs. The State, Keller
vs. The State,* and *Parkinson vs. The State.*" See also
*County Commissioners of Washington County vs. Franklin
Railroad Co.,* 34 *Md.,* 163.

Keeping in view the rules of construction we have
adverted to, and the intention of the framers of the Con-
stitution, and the evils to be remedied by the 29th section
of Article 3, of that instrument as ascertained and deter-
mined by the above cited cases, two questions are to be
answered : first, does the Act of 1878, ch. 160, embrace
but one subject, and second, is that subject described in
its title ?

First. It appears from the decisions before referred to,
that to render a law obnoxious to the clause of the 29th
section of Article 3, of the Constitution, there must be
engrafted upon a law of a *general* nature, some subject of
a private or local character, or that two or more dissimilar
and discordant subjects must be legislated upon in the
same law. Does the Act of 1878, chap. 160, in either of
these respects, come within the constitutional prohibition?
Its first section repeals sections 87 and 90, of Article 10,
of the Public Local Laws of Dorchester County, "as
enacted by the Act of 1870, chap 449," and all other laws,
and all parts and sections of all laws, which are inconsis-
tent with itself. The remaining sections then divide the
county into five commissioner districts and provide for the
election of one County Commissioner from each of said
districts at the next general election ; take the appoint-
ment of the Treasurer from the Commissioners by whom
that officer had previously been appointed and give it
to the Governor, and prescribe what duties he is to per-
form, as did the Act of 1870, chap. 449 ; imposing upon
him the additional duty of making monthly reports to

the Comptroller of the Treasury, and makes him Clerk to the County Commissioners, as he had been under the provisions of the Act of 1870. The appointment of the Tax Collectors is given to the Treasurer and their duties are prescribed. The several sections of the Act enact a system for levying and collecting the taxes in the county, and for disbursing the public money; and the duties of the County Commissioners, the Treasurer and the Tax Collectors are so closely connected and made so to depend each upon the other, that the execution of the system thus framed depends upon the faithful performance of their duties by the Commissioners, Treasurer and Tax Collectors. The *subject* of legislation was the management of the public affairs of Dorchester County by the County Commissioners and the other officers of that county, elected and appointed for that purpose. This is the only *subject* with which the Act of 1878 deals and the only one which is embraced within its provisions. In the case of the *Mayor, &c., of Annapolis vs. The State*, 30 *Md.*, 119, this Court has said, that "whilst it is the duty of the Court to place such a construction upon this constitutional provision, as shall guard against the mischiefs intended by it to be remedied, reason and sound policy demand, that we should not by a technical interpretation embarrass legislation and encumber laws with long and prolix titles." So it may be properly said here that while it is the duty of the Court to so construe the constitutional provision as to remedy the evils which were intended to be prevented, reason and sound policy demand that when the Legislature has enacted a system, forming but one subject, for the good and effectual government of a county, we should not, by a technical interpretation, defeat such legislation by holding that it embraced more than one subject, merely because its practical and effective execution required several agents or officers, holding their offices under different appointments. We cannot perceive that

the Act of 1878 is obnoxious to the charge of embracing more than one subject, and must hold it to be constitutional and valid unless the *subject* of it is not sufficiently described by its title.

Second. The title of the Act is as follows: "An Act to repeal sections eighty-seven and ninety, of Article ten, of the Code of Public Local Laws, title, 'Dorchester County,' sub-title, 'County Commissioners,' enacted by the Act passed at January Session, eighteen hundred and seventy, chapter four hundred and forty-nine, and all other sections or parts of sections of the Code of Public General Laws, and Public Local Laws, and all other Acts and sections, or parts of Acts or sections of the Acts of the General Assembly of Maryland, inconsistent with the provisions of this Act, and to enact the following in lieu thereof." This title clearly shows that the *subject* of legislation was the County Commissioners of Dorchester County, and the repeal of sections 87 and 89 of the Code of Public Local Laws, as enacted by the Act of 1870, ch. 449, and of all other laws whatsoever of this State inconsistent with the provisions of the Act to be passed. Any member of the Legislature, upon reading the title, would at once be informed that the *County Commissioners*, their powers and duties formed the *subject* to be dealt with by the Act. But it is said that the title describes one of the objects of the Act to be the repeal of sections 87 and 90 of the Code of Local Laws of Dorchester County, *as enacted by the Act of* 1870, *ch.* 449, when in fact the latter Act while it repealed the original sections 87 and 89 of the Local Code, did not enact its provisions into sections numbered 87 and 90, and consequently that there were no such sections to be repealed by the Act of 1878. It is true that the Act of 1870, did not enact its provisions as sections 87 and 90, but it is evident from a reading of the Act and of sections 87 and 90, which were repealed by it, that section two was intended to take the

place of section 87, for it changes the number of County Commissioners from five, which was the number under section 87, to three, and provided that their duties should be "as now provided by law," and the first section to take the place of section 90 of the Local Code, because the latter provided for the compensation of the clerk to the board of County Commissioners, while section one, of the Act of 1870, provided for the appointment of a clerk, who was also to act as Treasurer, and prescribed his duties. This intention was so evident, that in the Code of the laws of that session, prepared by Messrs. Cohen and Rowland, section two of the Act has been codified as section 87, and section one as section 90 in the Local Code. We are of opinion that the title of the Act of 1878, indicates with sufficient clearness that the provisions of the Act of 1870, which were intended to take the places of sections 87 and 90 of the Local Code, were to be repealed. That the Legislature has the power to repeal laws or sections of laws by reference to their title alone, unless restrained by some constitutional provision, there can be no doubt. While the Constitution of 1851, Article 3, sec. 17, provided that no law should be revived, amended or *repealed* by reference to its title or section only, the Constitution of 1867, Art. 3, sec. 29, has omitted the words "*or repealed*," so that there is no longer any restriction upon the Legislature, with respect to the repeal of laws by reference to their titles alone. The Act of 1878, repeals all laws, whether Local or Public, and all parts and sections of all laws which are inconsistent with its provisions, and whether the original sections 87 and 90 were repealed and re-enacted by the Act of 1870, or not, is of no importance. If they were, the Act of 1878, expressly repeals them, and if they were not, the provisions of the Act of 1870, are repealed by the subsequent part of the first section of the Act of 1878, which repeals all laws and parts of laws, which are inconsistent with its provi-

sions. Neither is a law inoperative and void, because it is not enacted in Articles and sections as directed by the 29th section of Article 3, of the Constitution. This section of the Constitution, so far as it was intended to be mandatory, uses language apt and appropriate for that purpose. In the first part of the section it is provided that the laws passed by the General Assembly *shall* embrace but one subject, and that *shall* be described in their titles; that no law *shall* be revived or amended by its title only; that no law *shall* be construed by reason of its title to grant powers, &c., and so down to where it comes to provide for the amendment of laws already in existence, and for the enactment of original laws, when the mandatory language is changed, and provision is then made that "it shall be the *duty* of the General Assembly," &c. This is merely *directory*, and while in the passage of the Acts of 1870, ch. 449, and 1878, ch. 160, the Legislature may have failed to discharge the duty imposed upon it, the Acts themselves are valid.

It was also contended that the title did not indicate that the appointment of the Treasurer was to be taken from the County Commissioners and conferred upon the Governor, or that the appointment of the Tax Collectors was to be taken from the Commissioners and given to the Treasurer. Under the Act of 1865, ch. 85, entitled an Act, &c., relating to County Commissioners, the appointment of Tax Collectors was given to the County Commissioners of the several counties of the State, and by the Act of 1870, ch. 449, under the title of an Act to add additional sections to Article 10, of the Public Local Laws of Dorchester County, relating to "County Commissioners for said county," the office of Treasurer was created. But as we have already said in a former part of this opinion, the Act of 1878 dealt with but one subject, which was a system for levying, collecting and disbursing the public money, and we are of opinion that that subject was sufficiently described in the title of the Act.

From these views it follows that the order of the Circuit Court for Dorchester County, dated 30th May, 1878, from which this appeal was taken, must be affirmed.

> *Order affirmed, and*
> *cause remanded.*

(Decided 24th July, 1878.)

BOWIE and ALVEY, J., dissented, and the latter filed the following dissenting opinion:

If that provision of the Constitution which declares that "every law enacted by the General Assembly *shall* embrace but one subject, and that *shall be described* in its title," is to have any force whatever, or is to be treated as anything more than an unmeaning declaration inserted in the organic law of the State, then I think it too plain for argument that the Act of 1878, ch. 160, is a nullity, because of its utter disregard of the constitutional requirement.

The Act in question has this remarkable title: "An Act to repeal sections 87 and 90, of Article 10, of the Code of Public Local Laws, title 'Dorchester County,' sub-title 'County Commissioners,' enacted by the Act passed at January Session, 1870, ch. 449, and all other sections or parts of sections of the Code of Public General Laws and Public Local Laws, and all other Acts and sections, or parts of Acts or sections, of the Acts of the General Assembly of Maryland, inconsistent with the provisions of this Act, *and to enact the following in lieu thereof.*" Then follows an Act of twenty-one sections, embracing a variety of subjects, several of which being alltogether different and distinct from those embraced by the Act of 1870, ch. 449.

In the first place, the Act of 1870, ch. 449, contains no such sections as 87 and 90, and makes no reference to any such sections. The Act consists of three sections, numbered

County Comm'rs of Dorchester Co. *vs.* Meekins.

1, 2, and 3, and is entitled an Act to *add* additional sections to Article 10, of the Public Local Laws of Dorchester County, relating to County Commissioners. The first section of the Act directs the appointment of a Clerk to the County Commissioners, prescribes his duties, and fixes his salary; the second prescribes the number of County Commissioners to be elected; and the third declares all inconsistent laws repealed. This is the whole scope and extent of the Act of 1870, ch. 449.

Now the title to the Act of 1878, ch. 160, as will be perceived, while it is quite elaborate in describing, or rather misdescribing, the laws that were intended to be repealed, furnishes no idea or intimation whatever of the subjects embraced in the sections enacted in lieu of those repealed. In order to get any idea of the subjects to which those sections relate, the sections themselves have to be read; the title applying as well to any other subjects as to those actually embraced in the sections. To simply say that you will repeal one or several laws, and enact what follows in lieu thereof, without intimation of the subject-matter, not only fails to give a description, but leaves the mind wholly uninformed, even beyond the aid of the imagination, as to what subjects are embraced in the newly enacted law. If the title therefore be of any consequence as means of information as to the subject-matter of the law, it wholly fails of its object in the instance of the Act in question.

In my opinion the Act is obnoxious to both objections taken to it; that is to say, it embraces more than one subject, and that there is a failure to describe the subjects of the enactment in the title.

As already stated, the Act consists of twenty-one sections. It provides (1,) for the re-districting of the county, and the election of five County Commissioners, and declares what their duties shall be. (2.) That the Governor of the State shall appoint a Treasurer of the county, whose func-

tions and duties are declared and defined; and among these he is required to act as Clerk to the County Commissioners, and is made the custodian of the records of the Commissioners' office. (3.) It provides for the appointment of Collectors of the county by the Treasurer, and their accountability to that officer. (4.) The County Treasurer is made the receiver of the State Taxes collected in the county by the collectors, and he is required to make monthly reports to the Comptroller of the State, and to pay over to the State Treasurer the money that he may receive on account of the State taxes collected. Thus the County Treasurer is made the financial officer, not only of the county, but the State also; and certain duties are imposed upon the Comptroller, and certain provisions made in reference to the collection of, and accountability for, State taxes, that do not apply in any other county of the State. (5.) The County Treasurer is given power and discretion, which by general law has been conferred upon the Comptroller exclusively, to order suits to be brought on the bonds of defaulting collectors of the State tax; and the mode and manner of conducting the legal proceedings in the Circuit Court, and what those proceedings shall be, in such suits, are prescribed; thus the Act regulates the proceedings in the common law Courts, as well as the financial affairs of both State and county. And yet, all this is said to constitute but one subject, and that subject sufficiently described in the title of the Act; which title I have before recited. To such a construction I cannot assent. I think the Act is void, and should be so declared. In my judgment, therefore, the mandamus should have been refused.