WEST WISCONSIN RAILWAY COMPANY *v.* BOARD OF SUPERVISORS OF TREMPEALEAU COUNTY.

The doctrine announced in *Tucker* v. *Ferguson*, 22 Wall. 527, — that an act of the legislature of a State, exempting property of a railroad company from taxation, is not, when a mere gratuity on the part of the State, a contract to continue such exemption, but is always subject to modification and repeal in like manner as other legislation, — reaffirmed, and applied to this case.

ERROR to the Supreme Court of the State of Wisconsin.

Argued by *Mr. P. L. Spooner* and *Mr. Matt. H. Carpenter* for the plaintiff in error, and by *Mr. S. U. Pinney* for the defendants in error.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The facts of this case are substantially the same with those of *Tucker* v. *Ferguson*, 22 Wall. 527, and the question presented for our determination does not vary materially from the one there decided.

The United States granted certain lands to the State of Wisconsin to aid in the construction of railroads in that State. The State transferred a portion of the lands to the plaintiff in error for the purpose and upon the terms and conditions specified by Congress.

Patents for designated quantities of the land were to issue to the company as successive sections of the road of twenty miles each were completed.    In the mean time, the title of the company was inchoate.    On the 2d of April, 1864, the legislature of Wisconsin passed an act, whereby, in the first section, it was declared that all the lands in question the title whereto should become vested in the company should be exempt from taxation for ten years from the passage of the act.    The second section declared that such lands should become subject to taxation as soon as they were sold, leased, or conveyed by the company. The last clause of this section is as follows : " Provided that said lands may be mortgaged for the purpose of raising funds to build said railroad without being subject to taxation for the time aforesaid."

. In August, 1868, the company executed a mortgage of its roadway and rolling-stock, and of all the lands it might thereafter acquire, as security for its bonds, to the amount of $4,000,000, maturing at different times.    By another act, of the 16th of March, 1870, the exemption from taxation was further extended for ten years.    But it was declared : " And it is further provided, and this act is upon the express condition that if said railroad company shall not have built their said road within two years from the passage of this act, then, and in that case, this act shall be null and void : provided, that this act shall not apply to Pierce County."

· The bonds secured by the deed of trust were issued in successive series, in the years 1868, 1870, 1871, and 1872.    The company realized from the four millions of bonds about $3,200,000, and applied the amount received to the construction of their road.    A part of the road was completed in 1868, forty-five miles in 1870, and the entire line during the month of November, 1871.    By an act of the legislature of March 15, 1871, it was enacted that the lands in Trempealeau County belonging to any railroad company " not used for road-bed or dépôt purposes shall

be liable to taxation the same as other real estate." By an act of March 24, 1871, the exemption act of March 16, 1870, was amended so that it should not apply to Trempealeau County. The tax in question was levied in 1871, and the sale for its non-payment complained of was made in 1872. The exemption created by the act of 1864 was to terminate in 1874. That specified in the act of 1870 was then to commence.

The plaintiff in error insists that these acts — the lands of the company having been mortgaged pursuant to the first, and the road having been completed within the time limited by the second — created a contract within the contract clause of the Constitution of the United States, and that, therefore, the two acts of 1870 abrogating the exemptions were void.

In the argument here, a large share of the discussion was devoted to sect. 1, art. 2, of the constitution of Wisconsin. In our view, it is unnecessary to consider that branch of the case, and it will not be further adverted to.

One who has examined this case cannot look through *Tucker* v. *Ferguson,* as reported, without being struck with the similarity of the points and arguments, as well as the substantial identity of the facts, in the two cases. The latter case was carefully considered in all its aspects by this court. It is unnecessary to reproduce at length the views then expressed. In that case, 22 Wall. 575, we said: —

" The taxing power is vital to the functions of government. It helps to sustain the social compact, and to give it efficacy. It is intended to promote the general welfare. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public good, where such contracts are not forbidden. But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists, it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of public right, and narrows a trust created for the good of all."

We hold here, as we held there, that the exemptions in question were gratuities offered by the State, without any element of a contract. There was no assurance or intimation

that they were intended to be irrevocable, or that the laws in question should not be at all times subject to modification or repeal in like manner as other legislation. If a different intent had existed, it would doubtless have been clearly manifested by the language employed. It would not have been left to encounter the possible results of such a struggle and conflict as have occurred in this litigation.

The State asked for no promise from the company, and the company gave none. It was optional with the company to mortgage its lands or not, and to complete or not to complete the road within two years. The early completion of the road was beneficial to the company as well as to the public. Until then, there could be no income, and there was a constant loss of interest. Every step of progress added to the value of the lands of the company through which the road was to pass.

Each party was at liberty to take its own course. If the company came within the condition specified in the act of 1870, it would be in a position to take the gratuity offered by that act. If this were so, the State might continue or withdraw that gratuity when it took effect, as it might deem best for the public welfare; and it possessed the same power with reference to the exemption created by the prior act of 1864, while that act was operative. Neither party was, nor was intended to be, in any wise bound to the other. The State was at all times wholly unfettered as to both exemptions. The company chose to bring itself within the condition of the act of 1870. The State chose to continue the gratuity for a time, and then withdrew it. The exemption given by both acts was abrogated a year before the bonds of the last series were issued, and before the first term of exemption expired or the second began. The State did what it had an unqualified right to do. In such cases, a reasonable doubt is fatal to the claim. *Prima facie* every presumption is against it. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported. *Providence Bank* v. *Billings*, 4 Pet. 561; *Christ's Church* v. *Philadelphia*, 24 How. 302; *Gilman* v. *Sheboygan*, 2 Black, 513; *Herrick* v. *Randolph*, 13 Vt. 531; *Easton Bank* v. *Commonwealth*, 10 Penn. St. 450; *People* v. *Roper*, 35 N. Y. 629.

We hold the conclusion we have announced to be the law of this case. With its ethics we have nothing to do. That subject is not open to our consideration.

*Judgment affirmed.*

MR. JUSTICE DAVIS did not sit in this case.