THE STATE, THE MOUNT PLEASANT CEMETERY COMPANY, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF NEWARK.

1. The charter of the relator provides "that the premises, burial lots, vaults, monuments, and other erections and fixtures of said cemetery, shall not be subject to any assessments, taxes or fines, unless otherwise ordered by the board of chosen freeholders of the county of Essex." *Held*, that this provision has none of the characteristics of a contract with the state; that at most it is an attempted delegation by the legislature to a subordinate public body of the power to tax the cemetery, and, if it is not void as a delegation of power, it is unquestionably repealable.

2. The act of April 4th, 1873, page 629, operates as a repealer of any exemption which might exist.

3. An assessment laid upon an erroneous principle will be corrected
under the act of March 23d, 1881.

On *certiorari*. In matter of assessment.

Argued at June Term, 1887, before Justices DEPUE, VAN
SYCKEL and MAGIE.

For the plaintiff, *Guild & Lum.*

For the defendant, *Joseph Coult.*

The opinion of the court was delivered by

VAN SYCKEL, J. The legality of the assessment against
prosecutor, for widening and opening Bellevue avenue, is con-
troverted in this case. The prosecutor claims immunity
under the provisions of its charter.

The sixth section of the original charter, approved January
24th, 1884, enacts "that the premises, burial lots, vaults,
monuments and other erections and fixtures of said cemetery,
shall not be subject to any assessments, taxes or fines, unless
otherwise ordered by the board of chosen freeholders of the
county of Essex."

To the foregoing act a supplement was passed, February
9th, 1861, which recites and provides: "Whereas, by the said
act, it was enacted that the premises, burial lots, vaults, mon-
uments and other erections and fixtures of said cemetery,
should not be subject to any assessments, taxes or fines, unless
otherwise ordered by the board of chosen freeholders of Essex;
and whereas, the said cemetery company are endeavoring to
create a fund from the surplus proceeds of the sale of the lots
of said cemetery, to provide means to preserve and maintain its
enclosures and buildings, and to pay the expenses for a proper
care of the same; and whereas, doubts have arisen whether
by said act such surplus proceeds are exempt from taxes and
assessments; therefore, to remove such doubts,

"Be it enacted: 1. That the property, assets and effects
of the said cemetery company, which have accrued or may ac-

crue, or be derived from the sale of lots in said cemetery, are hereby exempted from all taxes and assessments, and that the said surplus proceeds shall be held and used for the purposes above mentioned."

These legislative acts have been accepted by the corporators and are claimed by them to have the force of irrepealable contracts.

If this contention prevails, the assessment was unauthorized.

The words "taxes" and "assessments" are not synonymous. They exempt property from assessments for benefits as well as from taxes for general revenue for public use. *State, Protestant Foster Home, pros.,* v. *Newark,* 7 *Vroom* 478.

The extraordinary character of contracts, by which the state disables itself, *pro tanto,* to exercise its sovereign power, has constrained the courts to hold that the legislature will not be presumed to have irrevocably surrendered the right of taxation, unless no other rational conclusion can be reached.

The decided tendency of our own courts in this direction is illustrated in the cases following: *State, Trenton Water Power Co., pros.,* v. *Trenton,* 3 *Vroom* 426 ; *Little, Receiver,* v. *Bowers,* 17 *Vroom* 300.

In 1833, the legislature of Pennsylvania enacted that " the real property, including ground rents, now belonging and payable to Christ Church Hospital, in the city of Philadelphia, so long as the same shall continue to belong to the said hospital, shall be and remain free from taxes."

In 1851 the legislature passed an act repealing this exemption, and subjecting the hospital property to taxation.

The Supreme Court of Pennsylvania upheld this legislation, and that judgment was affirmed on appeal to the Supreme Court of the United States.

The view was taken that the legislative concession was spontaneous, requiring no service, duty or other remunerative condition, and therefore the essential element of a contract was absent. *Rector, &c., of Christ Church* v. *Philadelphia,* 24 *How.* 300.

While it has been authoritatively determined that the char-

ter of a private corporation is to be regarded as a contract between the corporation on the one hand and the state on the other, and that whatever stipulations are contained therein, which are intended for the benefit of the corporators, and operate as an inducement to them to accept the charter, are promises by the state based on valid and sufficient consideration, and not subject to recall, yet the distinction seems to be well recognized that an exemption, granted from motives of state policy merely, and where the state and its citizens do not meet on a basis of bargain and consideration, may be terminated at the legislative will. *Cooley on Taxation* 69; *Brainard* v. *Town of Colchester*, 31 *Conn.* 407; *Tucker* v. *Ferguson*, 22 *Wall.* 527; *West Wisconsin R. R. Co.* v. *Supervisors*, 93 *U. S.* 595.

Judge Cooley, in his work on Taxation, page 53, refers to these cases with approval.

In Trenton Water Power Company *v.* Parker, before cited, it was deemed of controlling importance that the elements of a contract were absent, that the grant was exclusively for the benefit of stockholders, no consideration having been reserved to the state, nor benefit conferred upon it, and no duty to the public imposed upon the company, or assumed by it.

The grant in the case certified is marked by the lack of all the qualities of a contract which distinguished the cases referred to. The scheme created by the act of 1844 is a private one, empowering the corporators to purchase and hold real estate, to lay it out and divide it into sublots, and to sell and dispose of it, and take the proceeds of sale to their own proper use and behoof. *Pamph. L.* 1844, *p.* 19.

No duty to the public is enjoined in the corporate body, and no public benefit conferred by the exercise of the franchise.

It is not necessary, however, to put the decision on this ground. There is a feature in this case which, in my judgment, deprives it of all claim to be treated as a contract with the state.

The sixth section of the act of 1844 does not create a per-

petual exemption, or one at the will of the company, but provides that the burden of taxation or assessment shall not be imposed, unless ordered by the board of freeholders of Essex. The board of freeholders is one of the public corporations of the state, exercising certain powers of government. It is wholly without the control of the relator, and, in respect to taxation, is antagonistic in interest to it. In the most favorable view that can be taken of this language on behalf of the company, it is a delegation by the legislature to a subordinate public body of the power to tax the prosecutor.

It has none of the characteristics of an agreement or compact with the corporation, and, as a delegation of the taxing power it is, if not void, unquestionably repealable. The supplement to the prosecutor's charter, passed in 1861, exonerating surplus proceeds, is subject to the power retained by the General Corporation act of 1846 (section 6), to alter or repeal the charter of any corporation thereafter granted.

Has the relator been deprived of any immunity which may have existed by subsequent legislation?

An act approved April 4th, 1873 (*Pamph. L., p.* 629), provides " that all the land and appurtenances in the city of Newark, owned or held, or vested in, or which may hereafter be owned or held by or vested in any society or corporation now existing in said city, under whatever charter or act the same is owned or held, or vested, shall be and be deemed to be subject to and liable for any and all assessments for street openings, and all other local improvements in the said city of Newark, as fully and the same as property owned by individuals in the said city, any exemption or provision contained in the charter of said society or corporation, or in any supplement thereto, to the contrary notwithstanding."

This language is very comprehensive and clear, and leaves no doubt whatever of the legislative intent to sweep away the immunity claimed.

The ordinance for widening was passed June 8th, 1872. The first re-assessment was made after April 4th, 1873. This assessment was set aside, and the assessment now complained

of was made in July, 1886. It is not, therefore, necessary to determine whether the act of 1873 shall have a retroactive effect.

The only remaining question is whether the assessment has been imposed upon a correct legal rule.

The assessment was made upon all the lands of the cemetery fronting on Bellevue avenue, to the depth of one hundred feet.

The assessed portion, excepting eleven lots, twenty-six feet by thirteen feet each, had, previously to the assessment, been sold for burial lots, and in most of them interments had been made.

The charter provides for the conveyance of burial lots to the purchaser in fee.

Under the authority of the *New York Bay Cemetery Company* v. *Buckmaster*, 20 *Vroom* 449, the fee, with the right to possession as against the cemetery company, passes by such conveyance to the purchaser.

The assessment in this case was made upon the entire strip of one hundred feet, without regard to the fact that the larger part of it had been conveyed away, and the burden was imposed to the same extent as if the lands were appropriated to residence or business purposes.

In this respect I think the commissioners, in making this assessment, applied an incorrect legal principle.

The only authority which the cemetery company could exercise over the portion conveyed was the right to enter upon it for the purpose of keeping the grounds in repair. It had no other beneficial interest in it. As to that portion, the widening of the avenue could confer upon the relator no appreciable benefit.

As to the balance of the assessed portion, the company having the unrestrained power to sell and dispose of it for their own advantage, the fact that it is assessed at the same rate as other lands does not show that any legal rule has been misapplied.

In respect to the portion of the assessed strip which had

been conveyed for burial lots, the assessment is erroneous and illegal, and therefore the assessment must be corrected in that particular. Application may be made under the existing law for that purpose. *City of Elizabeth* v. *Meeker*, 16 *Vroom* 157.