# THE BALTIMORE, CHESAPEAKE AND ATLANTIC RAILWAY COMPANY *vs.* COUNTY COMMISSIONERS OF WICOMICO COUNTY.

*Grant of Exemption from Taxation to a Railroad Company Does Not Pass to the Purchaser of the Property Under Foreclosure Sale— Organization of a New Corporation Buying Property of a Railroad Company.*

The Baltimore and Eastern Shore R. Co., which had been incorporated under the general law, was authorized by the Act of 1886, ch. 133, to acquire and operate other roads, and the Act declared that its franchises and property should be exempt from State, county and municipal taxation for the period of thirty years after the completion of the road between the *termini* mentioned in the charter. Default having been made under a mortgage conveying all the property and privileges of this company, the same were sold under a foreclosure of the mortgage to a purchaser, who organized a new company, the B., C. & A. R. Co., under Code, Art. 23, secs. 187 to 190. It is provided by these sections that in case of a sale of any railroad under foreclosure or other judicial proceedings, the purchasers may form a corporation for the purpose of owning and operating such railroad; and such corporation shall possess all the powers, rights, immunities, privileges and franchises in respect to such road which were possessed or enjoyed by the corporation previous to the sale by virtue of its charter and of other laws of the State. *Held,* that the exemption from taxation granted by the Act of 1886 to the Balto. and Eastern Shore R. Co. was intended to apply only to that company, and could not be transferred to another corporation, without express statutory authority, and did not pass under the foreclosure sale or otherwise to the B., C. & A. Ry. Co.

That no such exemption was acquired by the latter company by its organization under Code, Art. 23, sec. 187, because the immunities and franchises which were thereby vested in the company as the purchaser of the railroad were only such as could be transferred and such as were necessary for operating the road, and did not embrace the special grant of immunity from taxation.

That the grant of exemption from taxation in the Act of 1886 was not a contract within the meaning of the provision of the Constitution of the U. S. relating to impairing the obligation of contracts, but was a gratuity made after the company had been incorporated and upon no consideration and the company was not required to do anything in return for it, and that such grant was subject to repeal by the Legislature.

That even if the B., C. & A. Ry. Co. had acquired by its incorporation such right to exemption from taxation as was enjoyed by the Balto. & Eastern Shore R. Co. that right would have been revoked and extinguised by the Assessment Act of 1896 which directed a general assessment for taxation of all property in the State except that not liable to taxation by an irrepealable contract.*

Appeal from the Circuit Court for Wicomico County (PAGE, HOLLAND and LLOYD, JJ.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Robert P. Graham*, for the appellant.

*James E. Ellcgood*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings before us for the third time the claim of the appellant, the Baltimore, Chesapeake and Atlantic Railway Company, to an exemption from taxation.   It first came here, as a claim to exemption from municipal taxation, in the case of the *Appellant* v. *Ocean City*, reported in 89 Md. 89. It next appeared before us upon a question of county taxation in the case of the *Appellant* v. *The County Commissioners of Wicomico County*, reported in 93 Md. 113.   In each of these cases we held that the appellant was not entitled to the exemption.

The history of the incorporation of the appellant and the grounds on which it rests its claim to the exemption are too fully set forth in the opinions filed in those two cases to require restatement here.   We will however, to facilitate the consideration of the present case, again advert to the salient facts upon which the appellant founds its contention.

The Baltimore and Eastern Shore Railroad Co. was incorporated in 1886 under those sections of the General Corpora-

*The decision of the United States Circuit Court of Appeals in *Commissioners of Wicomico County* v. *Bancroft*, 135 Fed. Rep. 977, cited in the opinion of the Court in this case, was reversed by the Supreme Court of the United States at the October Term, 1906.

tion Law which were enacted by ch. 242 of the Acts of
1876. Certain additional powers, privileges and immunities
were granted to it by the Act of 1886, ch. 133. The last-named
Act authorized the company to consolidate with or acquire by
lease or purchase and operate any other railroad lying wholly
or partly within this State; and further provided that "its
franchises, property, shares of capital stock and bonds shall
be exempt from State, county and municipal taxation for the
term of thirty years accounting from the date of the comple-
tion of said road between the *termini* mentioned in its charter."

The Baltimore & Eastern Shore R. R. Co., armed with these
additional powers, purchased the Wicomico and Pocomoke
Railroad on June 30th, 1900, and on the following day made
a mortgage upon all of the property and franchises which had
been owned by either of the two railroads, to secure the pay-
ment of an issue of bonds. The property intended to be con-
veyed by the mortgage was therein described as "All and
singular the entire line of railroad of the party of the first part,
the Baltimore and Eastern Shore Railroad, situate, lying and
being in the State of Maryland, between Broad Cove, Eastern
Bay, Talbot County, and Salisbury, in Wicomico County, and
extending from said *termini* through the counties of Talbot,
Caroline, Dorchester and Wicomico, in said State, and also all
the line of railroad from Salisbury, Wicomico County, and
Hammock Point, in Worcester County, in said State, which
said last-mentioned railroad comprised the railroad of Wicom-
ico and Pocomoke Railroad Company, an entire distance of
about ninety miles," and also steamboats, docks, piers, rolling
stock, etc.; and the rights, privileges, franchises and immuni-
ties and exemptions, including the "immunity and exemption
from taxation granted to, conferred and bestowed on the party
of the first part."

Default having occurred under this mortgage it was fore-
closed in August, 1894, by a decree of the Circuit Court of
the United States for the District of Maryland and the entire
mortgaged property and franchises were sold under the fore-
closure to Nicholas P. Bond. He, along with certain asso-

ciates, then formed the appellant corporation with its principal office in Wicomico County, by filing a certificate with the Secretary of State under secs. 187, 188, 189 and 190 of Art. 23 of the Code of 1888, for the purpose of operating the railroad property which had been purchased by him at the foreclosure sale.

The municipality of Ocean City levied taxes on certain property, lying within its corporate limits, which had originally been owned by the Wicomico & Pocomoke R. R. Co., but had been acquired in the manner already mentioned by the appellant and was owned by it when the taxes were levied. The appellant refused to pay these taxes whereupon The Mayor and City Council of Ocean City brought suit and recovered a judgment against it for the amount of the taxes in the Circuit Court for Worcester County and we affirmed the judgment on appeal. In our opinion in that case we held that, as the property involved in that suit never had been owned by the Baltimore and Eastern Shore Railroad Co., it was not within the contemplation of the legislative exemption from taxation granted to that company by the Act of 1886, chap. 133. We there further held, although perhaps not necessary for the purposes of that case, that the exemption from taxation granted by that Act was in the nature of a personal privilege of the very corporation to which it was granted, and that it was not assignable, in the absence of express legislative authority, and that it did not pass to the purchaser of the Eastern Shore Railroad at the foreclosure sale.

We relied in part, in support of the views there expressed by us, upon the *Chesapeake & Ohio R. R. Co.* v. *Miller*, 114 U. S. 186, where it was held that while those franchises of a railroad company which were rights and privileges essential to the operation of the corporation and without which it could not successfully conduct its road might be conveyed to a purchaser as part of the property of the company, immunity from taxation was not one of those franchises but was personal to the company and "was incapable of transfer without express statutory direction." We also relied upon *Picard* v. *Tennessee*,

130 U. S. 641, where the Court said: "Yielding to the doctrine that immunity from taxation may be granted, that point being already adjudged, it must be considered as a personal privilege not extending beyond the immediate grantee, unless otherwise so declared in express terms, the same considerations which call for clear and unambiguous language to justify the conclusion that immunity from taxation has been granted in any instance must require similar distinctness of expression before the immunity will be extended to others than the original grantee.   It will not pass merely by a conveyance of the property and franchises of a railroad company although such company may hold its property exempt from taxation."

The same proposition is stated with at least equal force and clearness, and supported by the citation of authority in the *Memphis & Little Rock R. R. Co. v. Berry*, 112 U. S. 609, where it was said upon the authority of earlier decisions of the same Court that "the exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to, and to have perished with that, unless the express and clear intention of the law requires the exemption to pass as a continuing franchise to a successor. This salutary rule of interpretation is founded upon an obvious rule of public policy, which regards such exemptions as in derogation of the sovereign authority and of common right and therefore not to be extended beyond the exact and express requirements of the grants construed *strictissimi juris.*"

The appellant carried the Ocean City case by writ of error to the United States Supreme Court which dismissed the writ for want of jurisdiction, as will appear from the memoranda of unreported cases in 179 U. S.

When the Wicomico County case reported in 93 Md. 113 came before us we applied the same doctrine to the liability of the appellant for the taxes there sued for, which had been levied by the County Commissioners of Wicomico County upon certain portions of i;s road bed and other property which had formerly belonged to the Baltimore & Eastern Shore R. R. Co. and had been sold to Nicholas P. Bond under the fore-

closure of the mortgage made by that company.  After. the
decision of that case by this Court, Samuel Bancroft, Jr., a
non-resident holder of mortgage bonds issued by the appellant
applied for and obtained from the Circuit Court of the United
States for the District of Maryland an injunction restraining
the County Commissioners of Wicomico County from the levy
or collection of the taxes upon that portion of the appellant's
property which had formerly been owned by the Baltimore &
Eastern Shore R. R. Co.   We will refer to this injunction suit
more at·length further on in this opinion.

The present suit was instituted on December 27th, 1904, to
recover taxes levied by Wicomico County upon real and per-
sonal property assessed to the appellant for the years 1900 to
1904, inclusive.   The defendant pleaded the general issue
pleas, and limitations, and by a special plea claimed the benefit
of the exemption from taxation originally granted to the Bal-
timore & Eastern Shore Railroad Co. by the Act of 1886, ch.
133.   The case was tried before the Court without a jury
upon an agreed statement of facts.   The verdict and judg-
ment were for the plaintiff and the defendant appealed.   The
only bill of exceptions in the record is to the action of the
Court below upon the prayers.

The pleas of limitation were demurred to and the demurrer
was properly sustained because the pleas were to the entire dec-
laration while the taxes sued for in some of its counts had un-
questionably accrued within the statutory period of limitations.
There were some other questions of pleading raised by de-
murrers which were not relied on at the hearing in this Court
and do not affect the material issues in the case.

The substantial issue, of the appellant's right to the exemp-
tion from taxation claimed by it, was raised by the prayers
offered by it as defendant in the Court below all of which were
rejected.   The plaintiff offered no prayers.

In our opinion the Court below committed no error in re-
jecting the defendant's prayers.   We have already stated in
the cases in 89th and 93rd Maryland and in this opinion the
propositions which require us to hold that the exemption from

taxation granted to the Baltimore & Eastern Shore R. R. Co.
by the Act of 1886, ch. 133, did not pass to Mr. Bond, the
purchaser under the foreclosure of the mortgage, made by that
company and therefore it could not have passed through him
to the appellant.   It remains to be considered whether any
such exemption accrued directly from the State to the appel-
lant corporation when it was organized by Mr. Bond and his
associates in August, 1894, under secs. 187, &c., of Art. 23
of the Code of 1888.   Secs. 187 and 188, which are the ones
material to the subject now under consideration, are as fol-
lows:

"Sec. 187.   In case of the sale of any railroad situated
wholly within this State, or partly within this State and partly
within an adjoining State, or the District of Columbia, hereto-
fore or hereafter made by virtue of any mortgage or deed of
trust, whether under foreclosure or other judicial proceedings,
or pursuant to any power contained in said mortgage or deed
of trust, the purchaser or purchasers thereof, or his or their
survivor or survivors, representatives or assigns, may, to-
gether with their associates, if any, form a corporation for the
purpose of owning, possessing, maintaining and operating such
railroad, or such portions thereof, as may be situated within
this State, by filing in the office of the Secretary of State a cer-
tificate of the name and style of such corporation, the number
of directors, &c., &c.

"Sec. 188.   Such corporation shall possess all the powers,
rights, immunities, privileges and franchises in respect to such
railroad, or that part thereof included in such certificate, and
in respect to the real and personal property appertaining to
the same, which were possessed or enjoyed by the corpora-
tion which owned or held such railroad previous to such sale
under or by virtue of its charter and any amendments thereto,
and of other laws of this State, or the laws of any other State
in which any part of such railroad may have been situated,
not inconsistent with the laws of this State."

It is to be observed in the first place that there is nothing
in either of these sections expressly dealing with or even re-

ferring to the subject of the taxation of corporations to be formed under their provisions.   (The mode and extent of the liability of railroad corporations and their property to taxation is definitely and specifically provided for and regulated in Article 81 of the Code.)  Nor is there anything in either of these sections. manifesting an intention to bestow the quality of alienability upon exemptions from taxation, already held by existing corporations, or to change the policy of the law in dealing with them.

The declared object and purpose of those sections was to afford to the purchasers, of "any railroad" at a foreclosure or judicial sale, and their associates a convenient method of assuming a corporate form of organization "for the purpose (as therein expressly declared), of owning, possessing, maintaining and operating *such railroad."*   Therefore the provision in sec. 188, that the new corporation when formed "shall possess all of the powers, rights, immunities, privileges and franchises in respect to *such railroad"* and its property which were possessed and enjoyed by the corporation that owned the railroad before its sale should by reasonable interpretation be held to refer to and embrace only those powers, &c., enjoyed by the corporation formerly owning the railroad which had passed along with the road and its property under the foreclosure sale; together with such others only as might be necessary for conducting the new corporation and enabling it to successfully maintain and operate its railroad.   Those provisions, so general in their nature and containing no reference to the subject of taxation, ought not to be held by inference or implication to confer upon the new corporation an advantage so exceptional and so opposed to public policy and so inconsistent with the existing laws of the State as an exemption from taxation, merely because the State had seen fit by special Act of the Legislature to grant such an exemption to a corporation which once owned the railroad which the new corporation is about to take over and operate.

The decisions of this Court and of the United States Supreme Court are alike emphatic in their statement of the sound

rule of construction that the taxing power is so essential to the existence of government that it is never presumed to be relinquished unless the intent to relinquish is expressed in plain terms, or in the words of the Supreme Court, "in the clearest and most unambiguous language;" and the ascertainment of the intent cannot be left to inference or implication. Every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation. *Buchanan* v. *Commrs. of Talbot County*, 47 Md. 293; *State* v. *Balt. & Ohio R. R. Co.*, 48 Md. 73; *Appeal Tax Court* v. *Rice*, 50 Md. 312; *Appeal Tax Court* v. *University*, 50 Md. 465; *Memphis and Little Rock R. R. Co.* v. *Berry*, 112 U. S. 609; *Ches. & Ohio R. R. Co.* v. *Miller*, 114 U. S. 186; *Picard* v. *Tennessee*, 130 U. S. 641; *People of New York* v. *Cook*, 148 U. S. 409; *Phoenix Fire, &c., Co.* v. *Tennessee*, 161 U. S. 174.

Furthermore this State had distinctly declared its policy in reference to the local taxation of railroad property, by legislative enactment which was in full force in August, 1894, when the appellant was incorporated, and still remains unrepealed. Sec. 155 of Art. 81 of the Code of 1888 provides that "the property real and personal of *each and every railroad company in this State shall be assessed and taxed for county and municipal purposes* in the same manner in which the property of individuals is now taxed." Even if the presence of sec. 155 on the statute book had not made it inconsistent with the existing laws of the State to so construe secs. 187, &c., of Art. 23, as to make them operative to vest in the appellant, by virtue of its incorporation under their provisions, an exemption from taxation, such a construction would be in opposition to the well-settled principles of law to which we have already referred governing the subject of exemptions from taxation. The provisions of sec. 187, &c., did not become operative, as to the appellant, until it had accepted them by filing its certificate of incorporation and therefore, for the purpose of ascertaining the extent of its powers and immunities,

the law and the paramount policy of the State as they existed at that time must be applied.   *Memphis, &c., R. R. Co.* v. *Berry, supra; People of New York* v. *Cook, supra.*

· After the decision by us of the case of the present appellant *vs.* Wicomico County, reported in 93rd Md., the United States Circuit Court for the District of Maryland, at the suit of Samuel Bancroft, Jr., who was the holder of certain mortgage bonds issued by the appellant, passed a decree enjoining the appellant from levying, assessing or collecting the taxes on so much of its property as was formerly owned by the Baltimore and Eastern Shore R. R. Co.   Upon an appeal by Wicomico County from that decree it was affirmed by the United States Circuit Court of Appeals for the Fourth Circuit in the case of *County Commissioners of Wicomico County* v. *Bancroft,* reported in 135 F. R. 977.   We are informed by counsel that that case is now upon the docket of the United States Supreme Court, having been taken there by a writ of *certiorari,* but has not yet been reached for trial.   The controversy involved in that case has therefore not yet been finally disposed of.

The Circuit Court of Appeals in their opinion agree that the exemption from taxation granted by the Act of 1886 to the Baltimore & Eastern Shore R. R. Co. was not assignable and did not pass under the foreclosure sale.   But they treat the incorporation of the appellant company under secs. 187, &c., as a reorganization of the company to which the exemption was originally granted, and hold that out of such incorporation there arose a contract between the State and the appellant within the meaning of Art. 1, clause 10 of the Federal Constitution, for an exemption similar to the original one.   They further hold that : "The demand on the part of the County Commissioners of Wicomico County is in the nature of a legislative Act and is, therefore, in violation of Article 1, clause 10 of the Constitution of the United States, which provides : "No State shall pass any law impairing the obligation of contracts." They say in their opinion that by secs. 187 and 188 of Art. 23 "It was clearly the intention of the Legislature to provide means by which corporations that became insolvent or other-

wise embarrassed could be reorganized and continued under the provisions of the charter which originally brought them into existence. These sections were evidently framed for the purpose of providing for emergencies like the one presented in this case. There is a general inclination on the part of State Legislatures to grant immunities to railroads and other corporations with the view of encouraging the development of the particular section of country through which they are to be constructed. To undertake to build a short line of railroad in most sections of the country is a precarious one to say the least of it and in the absence of aid by subscription or immunity from taxation, instances are very rare, where individuals are willing to embark in such hazardous enterprises. In the present case the Legislature of Maryland seemed to adopt this policy, and in order to secure the construction of a road granted certain privileges, franchises and immunities to the Baltimore and Eastern Railroad Company for a period of thirty years, but it seems with all the encouragement and aid which had been given this company it was unable to stem the tide, and as a result its property was sold under foreclosure, and was purchased by the Baltimore, Chesapeake and Atlantic Railway Company.

"In passing upon this question it is necessary to ascertain the legislative intent as contained in section 188, and an examination of that section leads us to the conclusion that the Legislature fully understood the force and effect of the different terms used therein.

"In construing section 188 as affecting the rights of the Baltimore, Chesapeake and Atlantic Railway Company which was organized under its provisions, we are of opinion that the word 'immunities' was placed in said section for the purpose of exempting from taxation any and all companies thus reorganized which had been granted exemption from taxation by the Legislature in the first instance.

"In view of the decisions we are forced to the conclusion that the word 'immunities' is an apt expression in the present instance and must be construed to mean exemption from taxation."

We are unable to agree with the conclusion reached in that opinion, that the word "immunities" as used in sec. 188 was placed there "for the purpose of exempting from taxation any and all companies thus reorganized which had been granted exemption from taxation by the Legislature in the first instance." In the first place we do not think that the sections 187, &c., were intended to provide for the reorganization of embarrassed corporations. They were in our opinion intended simply, as they declare on their face, to afford to purchasers, of railroads at foreclosure or judicial sales, and their associates, an opportunity to form an entirely new corporation for the purpose of owning and operating the railroads purchased by them. The fact, that the statute confers upon the corporation when created franchises, immunities, &c., to the same extent as those enjoyed by the company formerly owning the purchased railroad, does not amount to a reorganization of that company. The franchises, immunities, &c., acquired by such an incorporation of the purchasers of the road are not received by any process of transfer from its former owner but come as a fresh grant from the State at the time of the incorporation. Secondly, sec. 188 being silent on the subject of taxation, the general expressions there used, in conferring upon the corporation to be created under its provisions by the purchasers of a railroad, the franchises, immunities, &c., without specifying or describing them, which were enjoyed by the corporation owning the road before its sale, do not amount in our judgment to that "clearest and most unambiguous language" or manifest that "express and clear intention of the law" universally held to be indispensable to create a valid exemption from taxation.

Furthermore the exemption from taxation which was enjoyed by the Baltimore and Eastern Shore Railroad Company did not rest upon a *contract*, in the sense in which that term is used in Article 1, clause 10 of the Federal Constitution with the State but was the creature of a mere voluntary grant by the Legislature. It was not one of the terms of the charter of that company. It was granted by the Act of 1886, ch. 133, which does not either in its title or its contents profess to

amend the charter of the company. It is purely a sponta-
neous grant made upon no condition and exacting no return.
It has frequently been decided that such acts of the Legisla-
ture involve no contract relation and may be repealed at
pleasure irrespective of any constitutional right of repeal on
the part of the Legislature.

In *Christs' Church* v. *Philadelphia*, 65 U. S. 300, the Legis-
lature of Pennsylvania in 1833 passed an Act reciting that
Christs' Church Hospital had for many years afforded an
asylum to poor persons who would probably else have be-
come a public charge, and enacting that the real property and
ground rents belonging and payable to the hospital should,
so long as they continued to be owned by it, be and remain
free from taxes. In 1851 the same Legislature enacted a
general law providing that all real and personal property be-
longing to any association or corporation which was then by
law exempt from taxation, other than that which was in the
actual use of the corporation or association or from which it
derived an income, should be subject to taxation in the same
manner as other property, and declared as repealed *pro tanto*
all previous inconsistent legislation. The hospital corpora-
tion resisted the payment of taxes, levied on certain of its
lands under this Act of 1851, upon the ground that the Act
of 1833 exempting the land from taxation was in effect a con-
tract which was impaired by the taxation of the land under
the Act of 1851 in violation of the Federal Constitution. The
Supreme Court of the United States when the case came to it
on appeal rejected the contention of the hospital and held that,
as the Act of 1833 was a spontaneous concession of the Legis-
lature and no service or duty or other remunerative condition
was imposed upon the corporation, the exemption granted by
it existed *bene placitum* and might be revoked at the pleasure
of the sovereign. The taxation under the Act of 1851 was
held to have been valid.

In *Tucker* v. *Ferguson*, 89 U. S. 575, it was held that a pro-
vision in an Act of the Michigan Legislature of 1871 exempt-
ing certain lands of the Flint & Père Marquette Railroad Co. from

taxation .for a certain number of years was not a contract be-
cause there was no consideration for it and the railroad company
was required to do nothing and did nothing in return for it.
It would have been a *nude pact* as between individuals and "it
had no higher character because one of the parties to it was
a State and the other a corporation and it was put in the form
of a statute." "It was the promise of a gratuity spontaneously
made which might be kept, changed or recalled at pleasure."
The Court in that case affirmed the decree of the Circuit
Court for the Western District of Michigan which refused to
enjoin the State from taxing the railroad company before the
expiration of the period of exemption fixed by the Act of 1871.
It does not appear from the report of that case that there had
been any formal repeal of the Act granting the exemption from
taxation.

In the *West Wisconsin R. R. Co.* v. *Supervisors*, 93 U. S.
595; *Tucker* v. *Ferguson*, was cited and relied on in constru-
ing an Act of the Legislature of Wisconsin of 1870 exempting
from taxation lands of a railroad company for a certain period
"upon the express condition that if said railroad company
shall not have built their said road within two years from the pas-
sage of this Act then and in that case this Act shall be null and
void." It was held in that case that the Act in question did not
constitute a contract within the meaning of the Constitution of
the United States and that the exemptions granted by it "were
gratuities offered by the State without any element of con-
tract." The Court there say that the taxing power "may be
restrained by contract in special cases for the public good
when such contracts are not forbidden. But the contract
must be shown to exist. There is no presumption in its favor.
Every reasonable doubt should be resolved against it." It
was also held that the condition in the Act in reference to
the early completion of the road did not alter the case, the
Court saying "The early completion of the road was beneficial
to the company as well as to the public.  *  *  *  If the
company came within the condition specified in the Act of
1870 it would be in a position to take the gratuity offered by

that Act.    If this were so the State might continue or with-draw that gratuity when it took effect as it might deem best for the public welfare."    The road was completed within the two years but the Legislature before the expiration of the ex-emption passed a general Act declaring liable to taxation the lands of any railroad, lying in the county traversed by the West Wisconsin Railroad, "not used for road-bed or depot purposes" and that Act was held valid although its effect was to withdraw *pro tanto*, the exemption granted by the Act of 1870.    That case was affirmed in *Grand Lodge* v. *New Or-leans*, 166 U. S. 149, and it has frequently been cited and re-lied on in the State Courts.

It is difficult to see, in the light of these decisions, whose reasoning is both sound and forcible, how the exemption from taxation donated to the Baltimore and Eastern Shore R. R. Co. by the Act of 1886 amounted to more than a gratuity spontaneously made which was subject to recall at the pleasure of the State and which could not operate as an effective re-straint upon the future exercise of the taxing power by the State.    It is true the exemption was not by the terms of the Act to begin until the completion of the road but the company was not required to build the road and when it did so it im-proved by so much the value of its own property.

If therefore we concede for the sake of the argument that the present appellant acquired by virtue of its incorporation under secs. 187, &c., of Art. 23 of the Code, the same kind of an exemption as that possessed by the Baltimore and Eastern Shore Railroad Company, we find it in possession of a mere gratuity which might at any time be recalled by the State and which placed no restriction upon the subsequent ex-ercise of the taxing power by the State.    Now in this state of the case we find that in 1896 the State by the general assess-ment law enacted in chap. 120 of the Acts of 1896 positively directed a new assessment for purposes of taxation to be made of all property in the State and taxes to be levied thereon. Sec. 2 of that Act declares that the property, real and personal of every railroad in the State shall be valued and assessed for

county and municipal purposes and later on in the Act it directs the appropriate officials to proceed to tax such property: This, if not a formal repeal, which it is not disputed the Legislature could have made of the legislation under which the appellant claims its exemption, certainly would have amounted to a recall of the exemption, if any such there were, within the ruling of the last cited Federal cases, especially of the case of the *West Wisconsin R. R. Co.* v. *Supervisors.* See also *County Commrs.* v. *Franklin R. R. Co.*, 34 Md. 159.

It is significant that in the last section of the Act of 1896, ch. 120, directing the general assessment is found this proviso. "Provided further, however, that nothing in this Act contained shall be held to discharge or release, impair or affect any *irrepealable contract or obligation of any kind whatsoever* existing at the date of the passage of this Act." This strongly indicates the intention of the Legislature that all existing contracts and obligations of any kind whatsoever, which were not irrepealable, were to yield to the provisions of the Act in so far as inconsistent with them.

Our conclusions upon the whole case are, that the exemption from taxation granted by the Act of 1886, ch. 133, was intended to apply only to the Baltimore and Eastern Shore Railroad Company and was not transferable and did not pass under the mortgage or otherwise from that corporation to the appellant; that the appellant did not, by virtue of its incorporation under secs. 187, &c., of Art. 23 of the Code, acquire from the State any right to an exemption from taxation; that even if it had acquired by its incorporation such a right to an exemption as that enjoyed by the Baltimore and Eastern Shore Railroad Company that right would have been recalled or extinguished by the Assessment Act of 1896, ch. 120; and that there exists therefore no obligation on the part of the State to exempt the appellant from that measure of local taxation to which it is liable under the provisions of Art. 81 of the Code. It results from these conclusions that the appellant is liable for the taxes to recover which this suit was instituted.

We entertain the highest regard for the learning and ability

of the two Federal tribunals who have expressed their opinions, in Bancroft's case, upon the legal propositions which are vital to the decisions now under consideration by us, but Bancroft's case still remains undecided by the Supreme Court of the United States where it is now pending. We of course hold ourselves ready to be governed by the decision of that high tribunal when it shall have spoken upon the subject of the alleged violation of Art. 1, clause 10 of the Federal Constitution by the levy of the taxes sued for in this case.

In the meantime as that question remains open we feel constrained to be governed by our own view of the law and affirm the judgment appealed from in the case before us, which is a controversy between one of the counties of the State of Maryland and a corporation organized under its laws, which depends for its solution upon the proper construction of those laws.

*Judgment affirmed with costs.*

(Decided March 27th, 1906.)