CONTINENTAL ACCOUNTING AND AUDIT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1243.        Promulgated June 15, 1927.

Personal service classification denied upon the ground that the earnings of petitioner are not to be ascribed primarily to the activities of the principal stockholders.

*Samuel B. Pack, Esq.*, and *Harry J. Gerrity, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $4,064.59, $3,104.34, and $2,747.24 for

the fiscal years ended June 30, 1920, and June 30, 1921, and for the period ended December 31, 1921, respectively. The deficiencies result from the refusal of the Commissioner to classify petitioner as a personal service corporation in determining its tax liability for the periods above mentioned.

### FINDINGS OF FACT.

In March, 1918, the petitioner was incorporated under the laws of Illinois as the Bankers Service Co. In August, 1919, the name was changed to that now borne by the petitioner.

During the years involved in this proceeding, the petitioner was engaged exclusively in public accounting work, which consisted of the auditing of books, making special accounting and tax investigations and rendering other related services of a public accounting nature. The operations of the business were supervised by the officers, and a certain number of accountants, called " staff men," were employed to look after and perform the various assignments, including the work in the field. The president, vice president, and secretary assisted the accountants in preparing the reports made of the work.

The gross income of the company was as follows:

| | |
|---|---|
| Year ended June 30, 1920 | $97, 295. 39 |
| Year ended June 30, 1921 | 98, 077. 13 |
| Year ended June 30, 1922 | 107, 701. 07 |

Petitioner's balance sheets for the years involved in this proceeding were as follows:

*Balance sheet as at June 30, 1920.*

ASSETS.

| | | |
|---|---|---|
| Current assets: | | |
| Cash in bank | $2, 835. 93 | |
| Petty cash fund | 50. 00 | |
| | | $2, 885. 93 |
| Accounts receivable | | 25, 761. 21 |
| Investments—Commercial paper | | 7, 500. 00 |
| Total current assets | | 36, 147. 14 |
| Other assets: | | |
| Work in process | $107. 50 | |
| Traveling funds | 310. 00 | |
| Furniture and fixtures | 3, 963. 32 | |
| Library | 238. 05 | |
| | | 4, 618. 87 |
| Total assets | | 40, 766. 01 |

LIABILITIES AND NET WORTH.

Current liabilities:
| | | |
|---|---|---|
| Accounts payable | $1,416.55 | |
| Accrued salaries | 2,089.66 | |
| Dividends payable | 9,600.00 | |
| Total current liabilities | | $13,106.21 |
| Reserve for depreciation | | 333.95 |
| Net worth: | | |
| Capital stock | $24,000.00 | |
| Surplus | 3,325.85 | |
| | | 27,325.85 |
| | | 40,766.01 |

*Balance sheet as at June 30, 1921.*

ASSETS.

Current assets:
| | | |
|---|---|---|
| Cash in banks | $4,786.15 | |
| Petty cash fund | 50.00 | |
| | | $4,836.15 |
| Accounts receivable | | 18,977.47 |
| Investments—Commercial paper | | 12,500.00 |
| Total current assets | | 36,313.62 |
| Other assets: | | |
| Work in process | $113.27 | |
| Furniture and fixtures | 4,658.60 | |
| Library | 381.42 | |
| | | 5,153.29 |
| Total assets | | 41,466.91 |

LIABILITIES AND NET WORTH.

Current liabilities:
| | | |
|---|---|---|
| Accounts payable | $3,864.10 | |
| Dividends payable | 2,100.00 | |
| Total current liabilities | | 5,964.10 |
| Reserves for: | | |
| Depreciation | $997.08 | |
| Contingent losses | 4,500.00 | |
| | | 5,497.08 |
| Net worth: | | |
| Capital stock | $30,000.00 | |
| Surplus | 5.73 | |
| | | 30,005.73 |
| Total liabilities and net worth | | 41,466.91 |

*Balance sheet as at June 30, 1922.*

### ASSETS.

Current assets:

| | | |
|---|---|---|
| Cash in banks | $6,398.66 | |
| Petty cash fund | 75.00 | |
| | | $6,473.66 |
| Accounts receivable | | 25,603.26 |
| Investments—Liberty bonds, 4¼% (par $4,250.00) | | 3,917.65 |
| Total current assets | | 35,994.57 |

Other assets:

| | | |
|---|---|---|
| Work in process | $65.79 | |
| Traveling funds | 138.91 | |
| Miscellaneous accounts | 12.92 | |
| Furniture and fixtures | 4,956.23 | |
| Library | 457.62 | |
| | | 5,631.47 |
| Total assets | | 41,626.04 |

### LIABILITIES AND NET WORTH.

Current liabilities:

| | | |
|---|---|---|
| Accounts payable | $56.50 | |
| Accrued salaries | 575.91 | |
| Dividends payable | 1,800.00 | |
| Accrued Federal taxes | 1,211.20 | |
| Total current liabilities | | 3,643.61 |

Reserves for:

| | | |
|---|---|---|
| Depreciation | $1,703.10 | |
| Contingent losses | 6,250.00 | |
| | | 7,953.10 |

Net worth:

| | | |
|---|---|---|
| Capital stock | $30,000.00 | |
| Surplus | 29.33 | |
| | | 30,029.33 |
| Total liabilities and net worth | | 41,626.04 |

The amounts shown above as investments in commercial paper represented investments made temporarily of funds which were not needed in the operation of the business during the slack periods, but which would be required during December and later months for pay rolls and traveling expenses when the business was heaviest. The Liberty bonds were acquired in connection with an abatement claim filed by the petitioner, and were held in escrow.

The petitioner was originally capitalized at $15,000, but when its name was changed, additional stock amounting to $9,000 was issued and between June 30, 1920, and June 30, 1921, a further amount of $6,000 was issued in the form of a stock dividend. The following is a statement of petitioner's officers and stockholders, together with

the amount of stock held by each for the years ended June 30, 1920, 1921, and 1922:

| Stockholders | Number of shares held | | |
|---|---|---|---|
| | June 30, 1920 | June 30, 1921 | June 30, 1922 |
| William F. Arnold, president and treasurer | 50 | 67 | 65 |
| A. J. Morin, vice president | 50 | 67 | 65 |
| R. E. Payne, secretary in 1920 | 20 | | |
| A. Himmelblau, secretary in 1921 and 1922 | | 10 | 15 |
| H. E. Otte, chairman of board | 50 | 50 | 50 |
| W. F. Hypes | 10 | 10 | 10 |
| A. F. Osterloh | 10 | 10 | 10 |
| Marquis Eaton | 20 | 20 | 20 |
| L. R. Wasey | 10 | 10 | 10 |
| P. S. Graver | 10 | 10 | 10 |
| H. E. Frees | 10 | 10 | 10 |
| G. L. Grawols | | 6 | |
| R. Y. Hoffman | | 5 | 5 |
| W. H. Pruden | | 10 | 10 |
| D. R. Forgan | | 15 | 15 |
| M. J. Schmaus | | | 5 |
| Total | 240 | 300 | 300 |

The stockholders of petitioner corporation consisted of lawyers, bankers, manufacturers, merchants, sales, and credit managers, a chemist, and a member of an advertising agency. It was thought that the stockholders who were engaged in various lines of activity would turn business to the petitioner. With the exception of a few members the stockholders turned little business to the company.

Arnold, who was president and treasurer, supervised petitioner's finances, spent considerable time soliciting business and was in charge of the audits of banks and special financial investigations. He devoted his entire time to the business.

Morin had the duties of vice president and general manager. He was in charge of the general accounting work, supervised the assignments of staff men, supervised handling the work in the field and the preparation of audit reports and solicited business. He had general charge of the auditing and accounting work being done for industrial and manufacturing organizations. He devoted all of his time to petitioner's business.

Payne, who was secretary during the year ended June 30, 1920, devoted his entire time to the business in that year, giving his special attention to public utility investigations. Part of his work consisted of soliciting business.

Himmelblau, who was secretary during the years ended in 1921 and 1922, devoted his entire time to taking care of the business procured by the other officers.

Grawols, who was a stockholder during the year ended June 30, 1921, was in the petitioner's employment as an accountant. Schmaus,

who was a stockholder during the year ended June 30, 1922, was employed by the petitioner as an accountant. With the exception of these two stockholders and the officers, none of the stockholders had any connection with the business except that arising from their stock ownership.

Otte, who was chairman of the board and who organized the petitioner corporation, during the years involved herein was engaged in the banking business, being president of a bank. During the first year involved in this proceeding, Otte and Arnold would have lunch together practically every day, using about an hour and a half discussing the various phases of the business, prospective customers, and plans for extending the business. Quite frequently in the afternoons, after he had finished his day's work in the bank, he would go to the office of the petitioner and there spend a couple of hours. Frequently during banking hours Arnold and Himmelblau would come to the bank and discuss with Otte various matters pertaining to bank audits and accounting work. On an average he devoted about two or three hours per day to the business of the petitioner. Most of the petitioner's business came through Otte's relationship with people who were doing business with his bank and banking friends.

During the year ended June 30, 1920, the salaries of the officers were as follows:

| | |
|---|---|
| W. F. Arnold, president and treasurer | $6,000 |
| A. J. Morin, vice president | 4,000 |
| R. E. Payne, secretary | 4,000 |
| H. E. Otte, chairman of the board | 3,000 |

For the subsequent years the salaries of all the officers except Otte consisted of stated sums plus a percentage of the earnings based on 15 per cent of the profits after providing for dividends of 20 per cent on the stock. Otte's salary for subsequent years remained $3,000.

Petitioner employed throughout these years an average of from 10 to 15 accountants, to whom it paid salaries running from $25 to $75 per week. The accountants, after receiving instructions as to the scope of the work, made the necessary examinations of the books of petitioner's clients, reporting their findings to the office and assisted in the preparation of the reports made by petitioner to its clients. Petitioner also employed an average of four typists to whom it paid from $35 to $45 per week. It also employed a bookkeeper who received a salary of about $30 a week, a switchboard operator who received about $25 per week, and a stenographer. Excluding officers' salaries, petitioner's weekly pay roll ranged from $400 to $450 during the summer months to about $1,000 during the busy season.

Petitioner was not a personal service corporation during the fiscal years ended June 30, 1920, and 1921 and the period ended December 31, 1921.

## OPINION.

TRAMMELL: The issue involved in this proceeding is whether the petitioner is entitled to exemption from the corporation income and profits taxes as a personal service corporation. Section 200 of the Revenue Acts of 1918 and 1921 defines such a corporation to be one—

* * * Whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include * * * any corporation 50 per centum or more of whose gross income consists * * * of gains, profits, or income derived from trading as a principal * * *.

The first requirement of the law is that the income of a corporation be ascribable primarily to the activities of the principal owners or stockholders.

We have found that during the years involved herein the services rendered by the petitioner consisted of the performance of public accounting work. The officers solicited business and supervised the operations of the corporation, while an average of from 10 to 15 accountants employed by the petitioner did the field work and assisted in the preparation of the reports rendered by petitioner to its clients. These accountants were paid salaries ranging from $25 to $75 per week. During the year ended June 30, 1920, there were only four stockholders taking any part in conducting the affairs of the corporation, while in the subsequent years there were five. This shows that during the first year involved in this proceeding there were from two to four times as many accountants employed in the business as there were stockholders, while in subsequent periods there were from two to three times as many.

The work performed by the accountants was an important element of the service rendered by the petitioner to its clients. Petitioner relied to a substantial extent upon the services of others who were nonstockholders.

We think that what was said in the *Appeal of Patterson-Andress Co.*, 6 B. T. A. 392, is applicable and controlling here. There we said:

In our opinion this clause means more than that the stockholders shall obtain the clients and supervise the work, or that clients shall look to their experience; it means, among other things, that the corporation may not rely upon non-stockholders to do a substantial amount of the work which produces the income whether such work be detailed or supervisory. Just as another clause excludes from personal service classification those corporations where

capital contributes materially to the income, so does this clause exclude corporations where the services of employees so contribute.

The work done by the stockholders was supervisory and directory. While such work was doubtless of importance and was an income-producing feature, we can not find from the evidence that work of the accountants who were employed was not a material income-producing factor.

In *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410, the court said:

The plaintiff claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception. "In such cases, a reasonable doubt is fatal to the claim. Prima facie every presumption is against it. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported." *West Wisconsin R. R. Co.* v. *Supervisors*, 93 U. S. 595, 598 (23 L. Ed. 814). See, also, *Lee* v. *Sturges*, 46 Ohio St. 153, 159, 19 N. E. 560, 2 L. R. A. 556.

The burden is upon the petitioner to show that it clearly meets all the requirements of the statute. Being an exception to the general provision under which corporations are ordinarily taxed, the provision should be strictly construed.

The petitioner, having failed to bring itself clearly within the provision of the statute, is not entitled to classification as a personal service corporation.

One of the tests not having been met, it is not necessary to discuss whether any other test is met.

*Judgment will be entered for the respondent.*

PHILLIPS concurs in the result.