*94 OPINION.
Van Fossan:
Section 200, paragraph 4, of the Revenue Act of 1918 and section 200(6) of the Revenue Act of 1921, define a personal service corporation. Three essential elements are prescribed; viz, (1) the principal stockholders must be regularly engaged in the active conduct of the business; (2) the income must be primarily attributable to their activities, and (3) capital must not be a material income-producing factor. Corporations 50 per cent of whose income is derived from trading as a principal or from Government contracts are expressly excluded from the classification. (Denver Live Stock Commission Co., 7 B. T. A. 985; Innes-Behney Optical Co., 7 B. T. A. 982.) Any corporation claiming personal service classification must satisfy all these requirements, and the absence of any one of them is fatal to the claim. Such a claim seeks—
* * * The benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception. “ In such cases, a reasonable doubt is fatal to the claim. Prima facie every presumption is against it. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported.” West Wisconsin R. R. Co. v. Supervisors, 93 U. S. 595, 598, (23 L. Ed. 814) * * *. Huhbard-Ragsdale Co. v. Dean, 15 Fed. (2d) 410.
* * * * * * *
Every corporation has full control of its own activities. It knows what the requirements of a personal service corporation are. It may comply therewith and easily keep within the limits thereof if it so chooses, or it may not if it otherwise prefers. If it does not fairly observe and keep within the requirements of the law, it should not claim the benefits which the law confers. To nearly comply with the law, or to come within, hailing distance thereof, is not enough. (Matteson Co. v. Willcuts, 12 Fed. (2d) 447.—Italics ours.)
While it is evident that J. A. Moore owned a majority of the outstanding stock during the taxable years, it does not follow that he was the only stockholder to be classed as a principal stockholder, within the meaning of that term as employed in the statutory definition of a personal service corporation.
* * * It is necessary, not only that the income of the corporation shall be derived from personal service, but also that it shall be derived primarily from the activities of those who principally are to share in that income, and therefore in the benefits of the law. If this were not so, the personal service *95 in such cases might be rendered by one or two, or a few only, and others largely interested in the corporation, but rendering no service, might be capitalizing the efforts of these few and realizing a profit therefrom.
To approximate the situation where similar service is rendered by copartner-ships, it is necessary that those who, principally, are to have the benefit of the law, must be engaged in a substantial way in rendering the personal service which the corporation claims to provide. Any substantial departure from this rule would be extending the law in such manner as to create a favored class, and would be wholly without justification. It is not necessary under the law that each stockholder shall be engaged in rendering the personal service, but the letter and the spirit of the law both require that the great body of the stock shall be in the hands of those who are rendering this service. (Matteson Co. v. Willouts, supra.)
It is not sufficient that the majority stockholders be regularly engaged in the active conduct of the business. The statute requires that the “ principal stockholders ” be so engaged, and that the income derived be attributable primarily to their activities. Addressing ourselves to the question of who were the principal stockholders, it is noted that in the respective taxable years the holders of approximately 83 per cent and 28 per cent of the outstanding stock were not engaged in the conduct of the business and rendered no service for the production of petitioner’s income. Only 33 shares of stock were outstanding, of which number Moore held 22 in 1920, and 24 in 1921. Of the remaining shares E. E. Harvey held 4 shares, or 12 per cent, in 1920, and 7 shares, or 21 per cent, in 1921. Were a decision on this point necessary to this decision, it might well be questioned whether the ownership by Harvey of 12 per cent in 1920 and 21 per cent in 1921 did not constitute him one of the principal stockholders in the corporation.
The record in this case, however, reveals other infirmities in petitioner’s case which are undoubtedly fatal. Petitioner derived its income from land surveys, map making, blue-print making and land-clearing contracts. All the work in these activities was performed by salaried employees or laborers. Out of a total gross income for the years 1920 and 1921 of $65,480.89, petitioner paid some $22,000 for ordinary labor engaged in clearing mangrove from a tract of land and in grading and developing the same. Moore supervised this work but his supervision does not appear to have been any different from that generally exercised by the active executive of any corporation, nor have we any evidence that any special abilities of Moore induced the placing of this contract. The charges made by petitioner to its customers for work done were based upon the services performed by its employees. In arriving at the amount to be charged, apparently the petitioner simply added its profit to the cost of these services to it. In such a situation the services of the surveyors, the draftsman and the blue-print operatives, and the labor employed on the land-clearing job were a primary factor in the production of petitioner’s income. *96 It would seem clear from this record that petitioner’s income is not attributable primarily to the principal stockholders, regularly engaged in the active conduct of the business. Continental Accounting & Audit Co., 7 B. T. A. 330.
In view of the above conclusion it is unnecessary to consider whether or not capital was a material income-producing factor, but we may point out that petitioner found it necessary at times to borrow funds with which to meet its pay rolls. It would appear, therefore, that at times borrowed capital played an' important part in the conduct of this business.
Petitioner has failed to establish a compliance with the requirements of the Acts and is not entitled to classification as a personal service corporation.

Judgment will be entered for the respondent.